## HELLER v. NATIONAL BANK OF WEST VIRGINIA AT WHEELING et al.

### No. 41–W.

District Court, N. D. West Virginia.

May 7, 1940.

Caldwell, Kline & Mead, of Wheeling, W. Va., for plaintiffs.

McCamic & Clarke and Chester R. Hubbard, 2nd, all of Wheeling, W. Va., for defendants.

BAKER, District Judge.

This is a civil action brought originally in this court to construe certain portions of the will of Laura M. Burt, deceased. The original plaintiff and intervening plaintiff are beneficiaries under said will. The National Bank of West Virginia and D. A. Burt are co-executors of said will. The other defendants hereto are beneficiaries under said will.

Jurisdiction of this court is based upon diversity of citizenship.

Findings of Fact

The following facts have been stipulated and are now found by the court to be true and correct:

Laura M. Burt, late of Wheeling, died testate on May 3, 1938. On June 11, 1938, the National Bank of West Virginia at Wheeling and D. A. Burt of the same city qualified as executors of her last will and testament and codicil thereto attached. Said last will and testament and codicil reads as follows:

"Will of Laura M. Burt

"I, Laura M. Burt, of Wheeling, West Virginia, do make and ordain the following as my last will and testament, having executed no previous will or other testamentary papers:

"First. My just debts and funeral expenses and the costs of administration of my estate shall be paid by my executors out of my personal estate.

"Second. I give and bequeath to the King's Daughters Nursery of Wheeling, W. Va., recently removed from south Eoff Street to Edgwood in said city, one thousand dollars; to the Associated Charities of Wheeling, one thousand dollars; and to the Home for Aged Women, now located at Thirteenth Street, Wheeling, one thousand dollars. The said bequests are intended as endowments, and my executors shall make such payments to the trustees of the general endowment funds of the different institutions, or shall cause such endowment funds to be properly instituted where none exist; my desire being that in each case the trustee or trustees and the principal of the fund shall be free from all control by the officers or directors of the charitable institution. If any of these organizations shall have ceased to conduct in or near the city of Wheeling a charitable enterprise of its present nature, my executors in their discretion may make such payment to the endowment fund of any organization with which it may have merged or which may have succeeded in its work.

"Third. My executors shall pay to The National Bank of West Virginia at Wheeling the sum of one thousand dollars, to be held, managed, and disposed of by it as endowment fund trustee under an agreement to be made with it in writing by my executors, which shall provide among other things, that the income of said fund shall be paid to or for the use of the St. Luke's Protestant Episcopal Church, now located at Penn and Ohio Streets on Wheeling Island.

"Fourth. My executors shall pay to The National Bank of West Virginia at Wheeling the sum of one thousand dollars to be held, managed and disposed of by it as endowment fund trustee under an agreement to be made with it in writing by my executors, which shall provide among other things that the income of said fund shall be paid to or for the use of the Thomson Methodist Episcopal Church, now located at No. 115 South Broadway on Wheeling Island.

"Fifth. I give and bequeath the sum of five thousand dollars each to my aunt,

Mrs. Mattie M. Burt, of Wheeling, if she shall survive me; to my mother's half-sister Mrs. Annie Baer of Ferguson, Missouri, if she shall survive me; to Mrs. Della Metcalf of Wheeling, if she shall survive me; to my cousin Mrs. Martha Work of Altoona, Pennsylvania, if she shall survive me.

"Sixth. I give and bequeath the sum of ten thousand dollars to my cousin Mrs. Laura C. Blair of Clayton, Missouri, or, if she shall not survive me, to her daughter, Mrs. Jean Heller, wife of Professor Otto Heller of Washington University, St. Louis; and the sum of ten thousand dollars to my cousin George Cornish of Portland, Oregon, or if he shall not survive me, to his son Russell Cornish.

"Seventh. I give, devise and bequeath to my sister, Jessie B. Mahlke, of Warwood, Wheeling, my one-half interest in the family home on South Penn Street, Wheeling Island, now known as No. 207, and all of my interest in the furniture and other contents of the home, including all of my clothing, jewelry, and other personal effects; also, for her personal use, my automobile, with all tools, equipment, parts and supplies relating to it. I also give, devise and bequeath to my said sister my two-thirds interest in our California orange grove and my stock in the San Antonio Water Company, of Ontario, California; which latter gifts shall be effective only in case I should die before the consummation of the sale of the orange grove and the water company stock.

"Eighth. I give and bequeath in trust to The National Bank of West Virginia at Wheeling all of my privately owned stock of the Wheeling Steel Corporation and stock and bonds of the Woodward Iron Company, including all securities which may have been substituted for them through any merger, sale or re-financing, also one hundred shares of the stock in the W. T. Burt Company. My said trustee shall keep the said fund and the various portions thereof, and any increment thereto which may arise from stock dividends or otherwise, invested in the making of such collateral or real estate loans; in the purchase of such securities or in the making of such other conservative investments, alone or jointly with other funds or investors, as it in its discretion shall see fit. It shall have full power and authority with respect to the selection, purchase, protection, sale, voting, management, collection and charge of any investments except that it shall follow any written instructions of my sister Jessie B. Mahlke, with reference to the voting of any stock, and it shall consult her before making any purchase or sale, and shall not make such purchase or sale if she shall disapprove it in writing. It shall have no liability for any loss not occasioned by its fraud or other gross misconduct; it shall not deal with said fund upon its own account by the purchase or sale of securities for profit or upon commission, but it may transfer well-secured loans to or from its own banking department or to or from another trust fund managed by it, and it may join such other fund in any proper joint transaction. It shall have full power to collect all income and to enforce all rights by suit or compromise. It shall have authority to transfer to my said sister any subscription rights which may appertain to any part of the fund; or with her approval, it may borrow money for the purpose of taking up such rights as a part of the principal of the fund, and may use any part of the fund as collateral security for such loan. If it shall merge with any other financial institution authorized by the United States of America or by the State of West Virginia to manage such trusts, this trust shall thereupon pass to such successor trustee.

"During the life of my sister, Jessie B. Mahlke, my said trustee shall pay the net income of said fund to her in quarterly installments, or as they may otherwise agree, and in the month of January shall render to her an itemized account of its transactions with said fund, principal and interest, within the preceding calendar year. Its compensation for the management of this trust shall be five per cent on the income received by it therefrom. Upon the death of my sister my trustee shall transfer the principal of said fund to the W. T. Burt Company to be disposed of by it free of all trust as a part of its general assets.

"Ninth. I give and bequeath to my sister, Jessie B. Mahlke, and to my cousin D. A. Burt, in equal shares, all of the securities which at the time of my death shall be located in my safety deposit box at The National Bank of West Virginia, or which shall be in the possession or under the control of said D. A. Burt, excepting my securities of the Wheeling Steel Corporation, the Woodward Iron

Company and the W. T. Burt Company. These bequests are made in recognition of the special services which each of them has so kindly rendered to me.

"Tenth. All of the foregoing devises and bequests shall be free of all inheritance, estate and other death taxes.

"Eleventh. I give, devise and bequeath all the residue of my estate, including any legacies which may lapse, but subject to all inheritance, estate and other death taxes, one-fourth to my said cousin D. A. Burt, or, if he shall not survive me, to his descendants per stirpes; one-fourth to my cousin Jeanette L. Irwin, wife of Arthur L. Irwin of Cleveland, Ohio, or, if she shall not survive me, to her descendants per stirpes; one-fourth to my cousin Helen Clarke, wife of Raymond Clarke of Great Neck, Long Island, or, if she shall not survive me, to her descendants per stirpes; and one-fourth, in equal shares, to Joseph Brooks, Morris Brooks, and Mary Burt Brooks, children of my deceased cousin, Burt Brooks of Little Rock, Arkansas, or, if any of them shall not survive me, then to the descendants of said Burt Brooks per stirpes; any residuary legacy which may lapse shall be divided among the other residuary legatees in the above-mentioned proportions.

"Twelfth. I name as executors of this will and of any codicils which I may make hereto my cousin D. A. Burt and Nelson C. Hubbard, both of Wheeling, West Virginia, fixing their compensation at five per cent of the appraised valuation of my estate; and I ask that they be relieved from giving security on their bond as such executors.

"Witness my hand and seal, at Wheeling, West Virginia, this 8th day of June, 1928.

"Laura M. Burt (Signed.)"
"Codicil

"I, Laura M. Burt, of the city of Wheeling, Ohio County, West Virginia, do hereby make, publish and redeclare this to be a codicil to my last will and testament, heretofore made, signed, sealed, published, declared and executed by me, and bearing date the 8th day of June, 1928, that is to say:

"First: I do hereby give and bequeath the sum of five thousand dollars ($5000) to Miss Martha Work, granddaughter of my cousin Mrs. Martha Work of Alexandria, Pennsylvania, if she shall survive me.

"Second: I do hereby name as co-executor with D. A. Burt of the city of Wheeling, state of West Virginia, of my last will and testament, together with this codicil, and of any other codicils which I make hereto, the National Bank of West Virginia, a corporation; Nelson C. Hubbard, the co-executor named in my said last will and testament, having died on the 11th day of December, 1937. If the said Bank shall merge with any other financial institution, authorized by the United States of America, or by the State of West Virginia, such institution shall succeed the said Bank as co-executor. If the said D. A. Burt shall predecease me, then the said National Bank of West Virginia shall act as sole executor.

"I hereby modify and amend my aforesaid last will and testament in accordance with the provisions of this codicil and, as hereby and herein modified, extended and amended, I do hereby confirm, ratify, redeclare, acknowledge, and republish my aforesaid last will and testament.

"In witness whereof, I have, on this 11th day of January, 1938, at Wheeling, Ohio County, West Virginia, signed, sealed, published, and declared the foregoing instrument as, and for a codicil to my last will and testament, bearing date the 8th day of June, 1928, in the presence of each and all of the subscribing witnesses, each of whom I have requested in the presence of each of the others to subscribe his name, together with his address, as an attesting witness in my presence and in the presence of each other.

"Laura M. Burt (Signed)

"Signed, sealed, published and declared on this 11th day of January, 1938, by Laura M. Burt as and for a codicil to her last will and testament, bearing date the 8th day of June, 1928, in our presence and in the presence of each of us, who, at her request and in her presence, and in the presence of each other, have on this 11th day of January, 1938, hereunto signed and subscribed our names and addresses as attesting witnesses.

"Lee C. Paull, residing at Wheeling, W. Va. (Signed)
"Chester R. Hubbard, residing at Wheeling, W. Va. (Signed)"

Upon June 15, 1938, the appraisal of Laura M. Burt's estate was filed in the County Court of Ohio County, as follows:

## "APPRAISAL OF LAURA M. BURT ESTATE

"REAL ESTATE:

| | | |
|---|---|---:|
| One-Half Int. House & Lot, 207 So. Penn Street | | $ 2,250.00 |

PERSONALTY:

| Stocks & Bonds:— | Shares | Price as of 5/3/38 | |
|---|---|---|---:|
| Am. Radiator & Std. Sanitary Pfd. | 36 | 150 | 5,400.00 |
| Am. Tel. & Teleg. | 50 | 127–1/4 | 6,362.50 |
| Crucible Steel Co. 7% Pfd. | 16 | 72 | 1,152.00 |
| Cont. Roll & Steel Foundry Com. | 35 | 5–1/4 | 183.75 |
| Whg. Dollar Savings & Tr. Co. | 17 | 135 | 2,295.00 |
| Fidelity Inv. Assoc. Pfd. | 39 | 88 | 3,432.00 |
| Fidelity Inv. Assoc. Com. | 50 | 100 | 5,000.00 |
| Firestone Tire & Rubber Series A. Pfd. | 40 | 84 | 3,360.00 |
| General Motors Com. | 100 | 29–7/8 | 2,987.50 |
| Hazel-Atlas Glass Co. | 1152 | 85–5/8 | 98,640.00 |
| Jefferson Glass Co. 7% Pfd. | 10 | | No value |
| Pacific Gas & Elec. 6% Pfd. | 50 | 28–3/4 | 1,437.50 |
| Penna. R. R. | 256 | 15–3/4 | 4,032.00 |
| Pressed Steel Car Com. | 15 | 6.8125 | 102.19 |
| Pressed Steel Car 5% 2nd. Pfd. | 18 | 19–1/2 | 175.50 |
| Republic Steel Corp. Prior Pfd. | 18 | 56–1/2 | 1,017.00 |
| Republic Steel Corp. Com. | 72 | 13.3125 | 958.50 |
| Sterling Products Inc. | 188 | 58 | 10,904.00 |
| U. S. Steel Corp. 7% Pfd. | 5 | 95–3/8 | 476.88 |
| Vick Chemical Co. Com. | 10 | 34 | 340.00 |
| Warwick China Co. Com. | 10 | 5 | 50.00 |
| Warwick China Co. "A"⎫ 1 sh. each<br>Warwick China Co. "B"⎭ per unit | 6 units | 60 | 360.00 |
| Wheeling Steel Corp. 5% Pfd. | 860 | 45 | 38,700.00 |
| Wheeling Steel Corp. Com. | 1159 | 17–1/2 | 20,282.50 |
| W. T. Burt Co. | 4000 | 5.33 | 21,320.00 |
| Woodward Iron Co. | 521 | 12–5/8 | 6,577.63 |
| Woodward Iron 2nd. 5% 1962 Conv. | $2400 | 81–1/2 Flat | 1,956.00 |
| Woodward Iron 1st. 5/1962 | $2000 | 101–1/2 | 2,030.00 |
| Accr. Int. | | | 33.89 |
| U. S. Treasury Bond 3–1/4 43/45 | $1000 | 109–11/32 | 1,093.44 |
| Accr. Int. | | | 1.62 |
| Interest Coupon 4/1938 | | | 16.25 |
| U. S. Treasury Bond 2–7/8 1955/60 | $5000 | 103–31/32 | 5,198.44 |
| Accr. Int. | | | 19.17 |

| Money, Notes & Acct. Receivable:— | |
|---|---:|
| W. T. Burt Co. Cr. Bal. as of May 3, 1938 | 3,225.00 |
| Bank Balance | 537.69 |
| Currency (Safety Deposit Box) | 460.00 |
| Currency on Hand | 37.54 |
| Travelers Checks (Amer. Express) | 120.00 |
| Note of D. A. Burt | 3,000.00 |
| Annuities in Equitable Life Ins. Soc. of U. S. | No Value |
| Household Furniture, Clothing, Jewelry, etc. | 100.00 |
| **Total** | **$255,625.49"** |

The following securities were found in the safe deposit box of Laura M. Burt at the National Bank of West Virginia following her death:

| | |
|---|---|
| Am. Radiator & Std. Sanitary Pfd. | 36 shares |
| Am. Tel. & Teleg. | 50 " |
| Crucible Steel Co. 7% Pfd. | 16 " |
| Cont. Roll & Steel Foundry, Com. | 35 " |
| Wheeling Dollar Savings & Tr. Co. | 17 " |
| Fidelity Inv. Assoc. Pfd. | 39 " |
| Fidelity Inv. Assoc. Com. | 50 " |
| Firestone Tire & Rubber Series A. Pfd. | 40 " |
| General Motors, Com. | 100 " |
| Hazel-Atlas Glass Co. | 1152 " |
| Jefferson Glass Co. 7% Pfd. | 10 " |
| Pacific Gas & Elec. 6% Pfd. | 50 " |
| Pennsylvania R. R. | 256 " |
| Pressed Steel Car 5% 2nd Pfd. | 9 " |
| Pressed Steel Car Com. | 15 " |
| Republic Steel Corp. Prior Pfd. | 18 " |
| Repubic Steel Corp. Com. | 72 " |
| Sterling Products Inc. | 188 " |
| U. S. Steel Corp. 7% Pfd. | 5 " |
| Vick Chemical Co. | 10 " |
| Warwick China Co. Com. | 10 " |
| Warwick China Co. "A" ⎱ 1 sh. each | |
| Warwick China Co. "B" ⎰ per unit | 6 units |
| Wheeling Steel Corp. 5% Pfd. | 860 shares |
| Wheeling Steel Corp. Com. | 1159 " |
| W. T. Burt Co. | 4000 " |
| Woodward Iron Co. | 521 " |
| U. S. Treasury Bond 3-1/4 43/45 | $1000.00 Face Value |
| Accr. Interest | 1.62 |
| Interest Coupon 4/1938 | 16.25 |
| Woodward Iron 2nd 5% 1962 Conv. | 2400.00 Face Value |

The following securities were in the possession or under the control of D. A. Burt at the time of Laura M. Burt's demise:

U. S. Treasury Bond 2-7/8 1955/60 .................... $5000.00
Accr. Interest ............. 19.17
Woodward Iron 1st 5/1962...... 2000.00
Accr. Interest ............. 33.89
Note of D. A. Burt............. 3000.00
W. T. Burt Co. Credit Bal. as of May 3, 1938.................. 3225.00

Upon the 18th day of December, 1938, the plaintiff, Jean Heller, received a letter from Chester R. Hubbard, attorney for National Bank of West Virginia at Wheeling, and D. A. Burt, co-executors of the will and codicil thereto of Laura M. Burt, which said letter is in words and figures as follows:

"Chester R. Hubbard
"Attorney at Law
"Board of Trade Bldg.
"Wheeling, West Va.

"December 16, 1938.

"In re: Laura M. Burt Estate

"As the attorney for the Estate of Laura M. Burt, deceased, I have advised the executors that the bequest to you by the said Laura M. Burt is only a bare legacy, there being no funds from which said legacy can be paid. This matter was given very careful consideration before I so advised the executors. We also made a complete and thorough investigation in an attempt to uncover any other assets which Miss Burt might have had, that could be used in the payment of your bequest.

"The only funds available for the payment of the debts, funeral expenses, costs of administration and taxes will be the amount realized from the sale of 3900 shares of stock of the W. T. Burt Company (these shares of stock are the only assets in the Estate not specifically bequeathed), plus $7,320.23, being the total amount of cash and accounts receivable. The debts, funeral expenses, costs of administration and taxes amount of $64,-412.79, while the 3900 shares of stock of the W. T. Burt Company appraised at only $20,787.00. From this you will see that it is necessary for the specific legatees to pay out of their legacies the sum of $36,305.56, so that even in the case of the specific bequests, a full share can-

not be paid. The reason for the taxes being so high in this case is due to the relationship between the testatrix and the specific legatees, which caused their inheritance to be taxed in brackets of 7% and 9%.

"In order to help you in understanding this matter, may I advise that under our law all general bequests are the first to be eliminated when there is not a sufficient amount with which to pay all the costs, and that the specific bequests are then reduced pro rata. I am enclosing a copy of the Will of the said Laura M. Burt, deceased, a copy of the appraisal, a copy of an affidavit signed by the appraisers, and a copy of a memorandum to the executors. You will note that your bequest is a general money bequest, and as above stated, the only money on hand is $7,320.23, which is only a small part of the amount necessary for costs.

"In regard to the 3900 shares of stock of the W. T. Burt Company which must be sold, may I advise that it was appraised at $5.33 a share, and that if you are interested in bidding on this stock, I would appreciate having you so advise me.

"I regret very much the necessity for this letter, and I know Mr. Burt feels quite badly about the situation, but there is absolutely nothing that can be done about it.

Very truly yours,

"CRH:HM C. R. Hubbard (Signed)"

A paper writing was enclosed in the aforementioned letter of Chester R. Hubbard, attorney, to the plaintiff, Jean Heller, which said paper writing was in words and figures as follows:

"In Re: Laura M. Burt Estate

"This Estate appraised at $255,625.49, and the testatrix gives away more than she owned. This conclusion is reached by adding together the items provided for by the will:

"Will Item One—Debts, funeral expenses and costs of administration amount of.... $ 24,843.98

"Will Item Two—Provides for three charitable bequests of $1000 each .............. 3,000.00

"Will Item Three—Provides for another $1000 legacy for charitable purposes ....... 1,000.00

"Will Item Four—Provides for a charitable legacy of $1000 1,000.00

"Will Item Five—Provides for four general money legacies of $5000 each............. 20,000.00

"Will Item Six—Provides for two general money bequests of $10,000 each........... 20,000.00

"Will Item Seven—Makes a specific devise of real estate appraised at $2250, and a specific bequest of household furniture, clothing, jewelry, etc., valued at $100........ 2,350.00

"Will Item Eight—Creates a trust consisting of $70,112.99. This is a specific bequest .................... 70,112.99

"Will Item Nine—Provides for a specific bequest of securities amounting to ......... 161,170.27

Total ................ $303,477.24

"This total does not include State or Federal Inheritance taxes, which will amount to $39,568.81.

"Evidently there is going to have to be an abatement of legacies. Items 2, 3, 4, 5 and 6 of the will being general money bequests, would therefore be the first to abate. Then there would be a proportionate abatement between the specific bequests in Items 7, 8 and 9 of the Will. There would be no residue."

The four thousand shares of the capital stock of W. T. Burt Company appearing in the appraisal of the decedent's estate were shares in the W. T. Burt Company, a Delaware corporation. There also existed at the time the will in question was written and at the time Laura M. Burt died a corporation known as the W. T. Burt Company, a West Virginia corporation. The West Virginia company was a wholly-owned subsidiary of the Delaware company, and had been organized solely for the purpose of taking title to certain West Virginia real estate which the Delaware company had acquired. Laura M. Burt never owned any stock in the West Virginia corporation. In fact, no stock in the West Virginia company was ever owned by anyone other than the Delaware company. The Delaware corporation was chartered April 1, 1938, with an authorized capital of one million dollars, consisting of ten thousand shares

of par value of one hundred dollars each. Nine thousand shares had been issued, and at the time of the death of Laura M. Burt were owned as follows:

| | |
|---|---|
| Laura M. Burt | 4,000 |
| Jessie B. Mahlke | 3,300 |
| D. A. Burt | 600 |
| Jeanette L. Irwin | 300 |
| Helen A. Clarke | 300 |
| The children of Burt Brooks | 300 |
| Martha E. Burt Estate | 200 |

Martha E. Burt was the mother of Laura M. Burt. Mrs. Martha Work, the grandmother of the co-plaintiff, Martha Work, Laura C. Blair, the mother of the plaintiff, Jean Heller, Jessie B. Mahlke and D. A. Burt, are legatees under the will of Mrs. Martha E. Burt.

The decedent, Laura M. Burt, at the date of the will and continuously thereafter until her death, was president and a director of the Delaware company. The defendant D. A. Burt is the manager of that company. The principal assets of the company have an estimated existing market valuation of slightly over two hundred thousand dollars.

Jessie B. Mahlke was a sister of Laura M. Burt. D. A. Burt, Jeanette L. Irwin and Helen A. Clarke were her first cousins, and the children of Burt Brooks were first cousins once removed.

During the lifetime of Laura M. Burt no one other than herself was authorized to have access to her safe deposit box at the National Bank of West Virginia, and no access was had thereto from the time of Laura M. Burt's confinement to the hospital, in what proved to be her last illness, until after her death, when said box was opened in the presence of the bank's officers to secure the aforementioned will for purpose of probate.

At the time of her death, the decedent was approximately sixty-five years of age. Her estate is still in process of administration.

All of the above facts are agreed to. In addition to this, only one bit of testimony was offered. The plaintiffs called as a witness D. A. Burt and asked him whether or not it was true that, about a week prior to Laura M. Burt's death, he had visited her at the hospital, and that upon that visit she had said to him, "I have made provision for Jessie, for you, Alan, and for the children, but I have made no provision for your children, however, and I hope that you will do something for them from the legacy, which you will receive."

At that time, the defendants objected to this question upon the ground that it was improper under Chapter 57, Article III, Section 1, of the Code of West Virginia. The witness was permitted to answer the question, subject to the court's later ruling upon its admissibility.

D. A. Burt denied that Laura M. Burt had made the statement in question, but said that there had been some discussion of the fact that her will had failed to provide for his children, that these children had been kind to her, and that she wished he would take care of them out of what he would get from her estate.

Upon this denial, Charles P. Mead, of counsel for the plaintiffs, inquired of Mr. Burt whether he had not, at a conference in the latter's office, held November 1, 1939, at which Mr. Burt, Mr. Mead, and Mr. Morgan Clarke and Mr. Chester R. Hubbard, counsel for the defendants, were present, told them that Mrs. Burt had stated to him at the hospital substantially the language attributed to her in the original question. Mr. Burt then denied that he had at the aforesaid conference made such a statement.

Following this, Mr. Mead, Mr. Clarke and Mr. Hubbard, were each in turn sworn. Mr. Mead testified that Mr. Burt had made this statement in the conference and that immediately thereafter he had returned to his office and had written this statement and submitted it to Mr. Hubbard for verification. Mr. Clarke and Mr. Hubbard testified, supporting Mr. Burt's assertion that the language in the question was not substantially the same as stated by Mr. Burt in the conference.

The court is well acquainted with all of these witnesses, and is certain that this variation in their testimony is due to the common frailties of human understanding and memory. I am certain that none of the gentlemen involved would color their testimony in the least in a matter of this kind. The statement, however, was one made in a general conference in which this present action was under discussion, and no doubt the various parties to said conference recollect the language used differently. However, for reasons set forth below in the discussion of the law

258

of this case, I do not feel that it is necessary for a decision of the questions herein involved to make a finding of fact as to just what Laura M. Burt said to D. A. Burt while she was ill in the hospital. For that reason, no finding is made thereon.

## Conclusions of Law

There are certain well-established principles of law which govern all cases involving the interpretation of wills. In the first place, it is not disputed that the court interpreting a will endeavors to arrive at the intention of the testator, but where a will is executed by a literate person, and especially where the same is prepared by a competent attorney, there is a general presumption that the testator intended what the will says. In other words, language which does not need construction must be given its usual force and effect. A second basic principle is that where there are insufficient assets to satisfy all of the bequests of a will the bequests abate in the following order: First, a residuary bequest; second, general legacies; and, third, specific legacies. Under this rule unless there is something on the face of the instrument which clearly indicates a contrary intention by the testator, all general legacies will abate before any specific legacies are penalized.

In the instant case, there is an attempt made by the plaintiffs to vary this rule. There is no doubt in my mind, and I herewith find as a matter of law, that the second, third, fourth, fifth and sixth, items of the will, and the first item of the codicil are general money legacies. The seventh, eighth and ninth, items are specific legacies. The eleventh item is a residuary legacy.

The eighth item of the will has been especially attacked as being void for uncertainty. First of all, the point is made that upon the termination of the life estate the principal shall be transferred to the W. T. Burt Company, without designating whether the Delaware or West Virginia company is intended. In this position I am unable to find any merit.

Laura M. Burt, in the ninth item of the will, referred to "my securities of the Wheeling Steel Corporation, the Woodward Iron Company, and the W. T. Burt Company." In other words, in the ninth item she was obviously referring to stock which she owned in the W. T. Burt Company. The only company by that name in which she was a stockholder was the Delaware company. Therefore, under the ninth item, she must have been referring to the Delaware company. It is a well-recognized principle of will construction that when a testator uses the same phrase in several parts of the will he is each time presumed to intend the same meaning. In addition to this, we have the fact that Laura M. Burt had been for years president of the Delaware company; was its largest individual stockholder, and had apparently been active in its management. She had no interest whatever in the West Virginia company except the interest which all the other stockholders of the Delaware company had therein by virtue of the Delaware company's owning the stock of the West Virginia company. I feel that in mentioning the W. T. Burt Company in the eighth item of the will the testatrix intended the Delaware company, and that this item is not sufficiently indefinite by reason of this ground to justify ignoring it in the will.

A further attack is made upon this eighth item in that it provides that after the life estate has terminated the corpus of the trust shall be paid to the W. T. Burt Company. The point is urged that some total stranger to the testatrix may acquire stock in the W. T. Burt Company and, hence, benefit by the testatrix's bounty. It is further urged that even a creditor of the company might so benefit.

One ready answer to this argument is that if Laura M. Burt desired to make such a will there was no legal impediment to her doing so. However, an examination of the probable working out of this item of the will shows that it actually will in all probability accomplish the natural purposes of the testatrix. The W. T. Burt Company, as found above, is a closely owned family holding company. All the stockholders therein are persons who are either mentioned in the will itself as legatees or who would at least be natural objects of Miss Burt's bounty. The payment to this company of the stock mentioned in the eighth item and the retirement of said stock would have the effect of increasing the value of the remaining stock in that company and, hence, benefiting the remaining stockholders. In brief, the carrying out of this trust will, as far as can be foreseen at this time,

result in benefits to all the surviving stockholders of the W. T. Burt Company, a result which Miss Burt would naturally have desired.

Again, taking another view, even though a stranger should bid in some of the stock in this company, the price such stock would bring is bound to be increased by the knowledge that the company will eventually receive the stock mentioned in item eight, which, in turn, will benefit the entire Laura M. Burt estate and, consequently, will assist all of the legatees under the will. I, therefore, am unable to find that the eighth item of the will is sufficiently vague and indefinite to justify rejecting the same in favor of the general money legacies.

In regard to the ninth item, I feel that it is equally clear and not subject to interpretation.

It is interesting to note that the tenth item "All of the foregoing devises and bequests shall be free of all inheritance, estate and other taxes" is placed in the will in the location at which we find it. If this sentence had been written between the sixth and seventh items, there might have been some ground for argument that the testatrix intended the general money bequests to be satisfied before the specific bequests. Placed as it is, it seems apparent to me that she intended the usual rules of construction to prevail.

 The plaintiffs in their brief insist that Miss Burt, by a mere mentioning of them as legatees, indicates an affection and regard, from which we must infer a desire to see them benefit under her will. This is undoubtedly a correct proposition. There is no question but that Miss Burt must have regarded these plaintiffs with affection or she would not have left them the sums set forth. However, as is frequently the case, Miss Burt in her will sought to give away considerably more property than she actually had at her death. Under this situation, some of her legatees are bound to suffer. The construction contended for by the plaintiffs would result in the penalizing of Mrs. Mahlke and Mr. D. A. Burt, the former being a sister and the latter a first cousin of the testatrix, both residing in the same city with her and both described by her as persons who had kindly rendered her special services. On the other hand, the plaintiffs are more distantly related,

live at a distance from the testatrix's usual abode, and apparently are no more favored by the testatrix than any of the other legatees under the will. I do not think that anyone reading the entire will could come to the conclusion that Miss Burt desired to have the general bequests to the plaintiffs paid out to the specific bequests mentioned in the eighth and ninth items of the will. It may appear at first glance that this is unduly favoring a specific bequest. A specific legatee enjoys this special advantage over a general legatee. In order to obtain that advantage he also bears the risk that the testator may during his lifetime dispose of the specific property bequeathed and, hence, void the entire bequest. A general legatee knows that if there is sufficient property he is bound to get the amount of his legacy. A specific legatee knows that he only will receive the legacy in the event the testator dies still in possession of the same. But where there is insufficient property the intention of the testator is presumed to be that specific bequests shall be satisfied in their entirety if there is sufficient estate to do so, even though to effect such satisfaction it is necessary to abate all of the general bequests. Hence, upon the face of the will itself and upon the stipulated facts, I can find no ground for reversing the usual order of abatement herein, and, therefore, hold as a matter of law that items second, third, fourth, fifth and sixth, of the will, and first of the codicil, must be abated in their entirety before any abatement is made in items eighth and ninth.

 This leaves only one matter undisposed of, and that is the effect of the alleged conversation between D. A. Burt and Laura M. Burt while the latter was suffering her last illness in the Ohio Valley General Hospital at Wheeling. As stated above, the evidence upon this matter is conflicting. It would be extremely difficult for the court to sift this evidence and to make a finding as to just what such evidence shows the testatrix said upon that occasion—this is, of course, assuming that the testimony is not barred by the West Virginia statute, and that parol evidence is admissible in matters of this kind, both of which assumptions have been attacked by the defendants. The question as to whether or not the statute would bar the conversation is rather dif-

ficult. The statute in question, Chapter 57, Article III, Section 1, Code of West Virginia, reads as follows: "No person offered as a witness in any civil action, suit or proceeding, shall be excluded by reason of his interest in the event of the action, suit or proceeding, or because he is a party thereto, except as follows: No party to any action, suit or proceeding, nor any person interested in the event thereof, nor any person from, through or under whom any such party or interested person derives any interest or title by assignment or otherwise, shall be examined as a witness in regard to any personal transaction or communication between such witness and a person at the time of such examination, deceased, insane or lunatic, against the executor, administrator, heir at law, next of kin, assignee, legatee, devisee or survivor of such person, or the assignee or committee of such insane person or lunatic."

There is authority in West Virginia for the proposition that this statute is intended merely to include evidence offered by a witness in his own behalf, and does not apply where the testimony sought to be introduced is against the interest of the witness. See Owens v. Owens' Adm'r, 14 W.Va. 88, 95; Crothers' Adm'r v. Crothers, 40 W.Va. 169, 20 S.E. 927.

Against this exception to the rule, however, the defendants urge that the witness, even if he could testify to the matter as against his own interest, cannot be heard to jeopardize the interest of the other defendants whom he has no power to bind.

I would not be so foolish as to attempt to say that I would consider this evidence as binding upon the defendant D. A. Burt, but erase it from my mind when considering the rights of the other defendants. However, I do not feel that, even if Miss Burt made the exact statement attributed to her by the plaintiffs, it would have

any bearing upon the outcome of this case. It is true that she says that she has made provision "for the children," and from this it is argued that she at least believed that "the children" had been provided for and that these plaintiffs come within the classification "the children." I feel, however, that viewing the entire circumstances of the case, the fact that she was in what proved to be her last illness and had only about a week to live, and taking everything into consideration, the most which could be said for this is that it showed a regret upon her part that she had not made specific provision for the children of D. A. Burt. In other words, if it shows anything it would be a desire that the Burt children should be made equal with the others. This, of course, she could not do by parol and, hence, the entire conversation becomes of no effect. In other words, even if I should hold that this conversation is admissible in evidence, and if I should find as a fact that the testatrix used the language attributed to her by the plaintiffs, it would still have no bearing upon my decision of this case. I, therefore, decline to rule upon the moot legal question as to its admissibility.

For the reasons set forth above a decree may be presented, finding that there is nothing in the will and codicil constituting the plaintiffs preferred legatees over other general legatees, nor is there anything entitling the general legatees to call upon the beneficiaries of specific bequests to pay the general legacies in whole or in part from the properties specifically devised.

The plaintiffs for the payment of their legacies must look to the general and not specifically given assets of the testatrix's estate.

This action should be dismissed at the costs of the plaintiffs.