Argued April 18, reversed and remanded May 22, 1957

IN THE MATTER OF THE ESTATE OF ALMONA B. REES,
DECEASED

FISHER *v.* PAINE ET AL

311 P. 2d 438

*Allan Hart,* Portland, argued the cause for appellant. With him on the briefs was Alfred C. Veazie, Portland.

*F. A. Fredrickson,* Portland, argued the cause for respondents. With him on the brief were Gray & Lister, Portland.

Before PERRY, Chief Justice, LUSK, WARNER and KESTER, Justices.

## WARNER, J.

This is an appeal from the Probate Department of the Circuit Court of Multnomah County directing the distribution of 50 shares of corporate stock and, as an incident thereto, construing the will of Almona B. Rees, deceased. The order related solely to the specific bequest to the appellant, William A. Fisher, Jr., of 25 shares of United States Steel Corporation stock and held that this gift did not include 50 additional shares of the same stock which Almona B. Rees acquired before her death, but after she had executed her will on the first day of May, 1946.

The third paragraph of Mrs. Rees' will provided for a gift to her grandson, the appellant, and reads as follows:

"Third: I bequeath to my grandson, William A. Fisher, Jr., the twenty-five shares of the United States Steel stock which I possess."

At the time Mrs. Rees made her will, she owned certificate No. P 468311 (hereinafter called "certificate P") for 25 shares of no-par common stock of United States Steel. It was the only stock of the corporation then owned by her.

Three years later, on May 12, 1949, the defendant received 50 more shares of United States Steel of the same type of stock. These additional shares were evidenced by one certificate numbered X 118843 (hereinafter called "certificate X"). Thus, Mrs. Rees became the owner of 75 shares (represented by certificates P and X) and which she still had when she died.

They were duly inventoried and together appraised at $2,690.40.

Decedent's will of May 1, 1946, was not changed prior to her demise in Multnomah County, Oregon, on September 4, 1953. Upon probate of the will, the executrices nominated by the decedent were appointed by the court and now appear in their official capacity as the respondents in this appeal. They were sisters of the decedent and with other beneficiaries were residuary legatees under the will.

The probate of Mrs. Rees' estate proceeded in due course without delay or incident to and including the order approving the final account and report of the respondents on June 9, 1954. That order authorized and directed the executrices to pay over and deliver decedent's estate to those entitled to receive it under her will but without attempting to specifically allocate any particular items of property to anyone named therein.

After the order of June ninth was entered directing the respondents to make distribution, but before distribution was begun or completed, the respondents, in their capacity as executrices, apparently realized for the first time that there was a unique legal relationship between stock certificates P and X that had some impact upon the third provision of the will favoring Mrs. Rees' grandson. Being uncertain as to the legal character of certificate X, in October, 1954, the respondents, therefore, petitioned the court for a direction as to the proper disposition of certificate X, that is, whether it should be distributed to William A. Fisher, Jr., under the third paragraph of the will or, under the sixth paragraph, be included as an item of the residuary estate. In their petition the respondents describe certificate X as one which "was issued to

Almona B. Rees by reason of a *stock dividend* or *split* effective May 12, 1949." (Emphasis ours.) Shortly thereafter, appellant filed his "petition," which, in a sense, is an answer to the petition of the executrices for advice. In his petition appellant alleges that certificate X for 50 shares is a "split," or, in effect, a division of the 25 shares represented by certificate P into three times as many as there were of the original 25 shares, each of the 75 shares having a value equal to one third of the value represented by a single share of the original stock. He prayed for an order directing the executrices to turn over to him both certificates P and X as his proper distributive bequest under the third paragraph of the will.

A hearing was had on the issue raised by the respective petitions and the circuit court, on December 29, 1954, ordered that certificate X be treated as an item of the residuary estate, reduced to cash and distributed as provided by the residuary clause of the Rees will. It is from this order Mr. Fisher appeals.

■■ A circuit court sitting in probate has a limited jurisdiction to construe wills. With respect to personal property, when a question arises as to the distribution of an estate, the probate court has power to direct by its decree the manner of such distribution, and also the power to construe a will incidental to such distribution if that is necessary. *Arnold v. Arnold,* 193 Or 490, 497, 237 P2d 963, 239 P2d 595; *Woodburn Lodge v. Wilson,* 148 Or 150, 160, 34 P2d 611; *In re McGinnis' Estate,* 91 Or 407, 179 P 254; *In re Wilson's Estate,* 85 Or 604, 167 P 580; *In re John's Will,* 30 Or 494, 47 P 341, 36 LRA 242. Predicated upon the foregoing rule, the Probate Department of the Circuit Court of Multnomah County had jurisdiction to consider and dispose of the question presented by the presence of certificate

X under its power to direct by decree the manner of its distribution, and also the power to construe Mrs. Rees' will as incidental to that direction.

It is important to note the provision of the will under which Mr. Fisher claims the stock of the United States Steel Corporation is a specific bequest. *Noon's Estate,* 49 Or 286, 293, 88 P 673, 90 P 673; *In re Banfield's Estate,* 137 Or 256, 284, 299 P 323, 3 P2d 116; *In re Preston's Estate,* 157 Or 631, 635, 73 P2d 369; *Fidelity Title & Trust Co. v. Young,* 101 Conn 359, 125 A 871 (1924); *Chase National Bank v. Deichmiller,* 107 NJ Eq 379, 152 A 697, 699 (1930); 57 Am Jur 942, Wills § 1409. On that point the parties are in accord.

The question of major interest projected by this appeal is: When a person executes a will making a specific bequest of corporate stock and thereafter the testator during his lifetime receives from the issuing corporation additional shares of the same stock as a result of a "stock split" or "split up" and the testator dies while continuing to hold both the original stock shares and the additional shares which were given to implement "the split," and does so without altering his will, are all the additional shares which came to him as an incident of the split to be treated as a part of the specific bequest, to be distributed to the specific legatee, or are they to be considered as a part of the residuary bequest and be distributed to the beneficiaries of the residuary estate?

■ As indicated by the cases later referred to, the question propounded is always to be resolved in terms of testamentary intent. The query in each case is whether or not the testator intended that the additional shares (in this matter, those represented by certificate X) issued to and received by him after the execution of the will should be treated as a part of the specific

bequest of 25 shares (represented by certificate P) or become a part of the residuary estate.

When stock is issued as the result of a "stock split" and not as a stock dividend to a testator and received by him under the circumstances present here, the courts are virtually unanimous, as we shall later see, in holding that the testator intended the additional stock received by reason of the split to remain and be a part of the specific bequest, unless, of course, there is language in the will which would negative the intent to be derived from a reading of the provision for the specific bequest.

Mrs. Rees' will is relatively short, simple and direct and we find nothing therein to alter the pattern of the bequest for Mr. Fisher or deny to him the opportunity to receive the 50 shares represented by certificate X, unless the law itself mandates the additional shares resulting from the stock split be added to the residuary estate.

This is the first time that this court has had occasion to consider any matter relating to a "split" or "split up" of corporate stock. Notwithstanding, the subject is not new to the law of this country or that of England. See *Walton v. Walton,* infra, an opinion of Chancellor Kent, written in 1823, and wherein his conclusions are buttressed by earlier English decisions. Even though a "stock split" had long enjoyed favorable recognition in corporate law, it was a device seldom employed by corporations in this country until the postwar decade following World War I when it reached almost flood proportions. Harvard Business Review, Vol XI, No 3, p 316 (Apr 1933) and was again revived during the years following World War II. Graham & Dodd, Security Analysis (3d ed 1951), p 442. This relative newness or late revival in the use of this corporate stock

device, no doubt, accounts in this country for the relative recency and paucity of judicial expression treating with any phase thereof, at least in comparison with the abundance of judicial holdings in the area of "stock dividends." We note, too, that most of the legal literature dealing with the subject of "split stock" springs from cases involving the construction of wills and in most every instance raising questions directly connected with specific bequests and similar to the one presented here. This observation will be confirmed by a reading of those cases later cited as authority for the rule upon which our decision in this matter rests.

We find a sameness of terminology in the definition of stock splits given by accountants and the definitions supplied by the courts, and also a disposition upon the part of both to define the term "split" by contrasting the function of the "stock dividend" with the additional stock accruing to a stockholder in a "stock split." It is for this reason, and because of the recitals found in the petition of the executrices revealing that they were uncertain whether certificate X was issued to Mrs. Rees by reason of "a stock dividend or split," we choose citations of this character as a basis for our definition of "split stock."

■ We turn to *In re Lawrie's Estate,* 119 NYS2d 906 (Surr Ct 1953), for what we believe is not only a current, but clear, excellent and sufficient definition of a stock split. At page 911 the court says:

"The essential distinction between a stock dividend and a stock split is that in the former there is a capitalization of earnings or profits together with a distribution of the added shares which evidence the assets transferred to capital, while in the latter there is a mere increase in the number of shares which evidence ownership without altering the amount of capital or surplus. Matter of Strong's

Will, 198 Misc. 7, 19, 96 N. Y. S. 2d 75, 86, affirmed 277 App. Div. 1157, 101 N. Y. S. 2d 1021; Matter of Lissberger's Will, 189 Misc. 277, 278, 71 N. Y. S. 2d 585, 586, affirmed 273 App. Div. 881, 78 N. Y. S. 2d 199; Matter of Lissberger's Will, 188 Misc. 811, 64 N. Y. S. 2d 370.''

The definitions of ''stock split'' supplied by outstanding accountants are of the same tenor. See Arthur Stone Dewing, A Study of Corporation Securities (1934), at p 98; Wixon, Kell et al., Accountants' Handbook (4th ed 1956), § 21.39; Graham & Dodd, Security Analysis (3d ed 1951), at p 441.

Although the evidence is meager, we believe it required a finding by the court that certificate X is what in corporate law is known as a ''split.'' We discover nothing in the record which would justify us in finding that she acquired it in any other manner. Having made this determination, the only remaining question is, whether certificate X as a split has such a legal unity with certificate P that both certificates pass under the third provision of the will to the appellant legatee, or, to the contrary, as argued by the respondent executrices, it is a part of the residuary estate governed and controlled by the provisions of paragraph six and thus in accord with the order of the probate court from which this appeal is taken.

By the great weight of authority, the rule applicable in this matter is: When a will has a provision which is a specific bequest of corporate stock, and the testator during his lifetime receives from the issuing corporation additional shares of stock which represent a stock split of the shares originally bequeathed, and the testator thereafter dies without changing the specific bequest, the additional shares resulting from the stock split are a part of the bequest as if such additional

shares had been initially included therein and the change wrought by the split does not work an ademption of the specific bequest. Such appears to be the rule in all states where the question has been presented, except in Tennessee. See *Davis v. Price,* infra.

One of the earliest decisions in point is *Walton v. Walton,* 7 Johns. (NY Ch Rep), chs 258, 267, an opinion of Chancellor Kent to which we have earlier made reference. It involved two shares of stock in a certain lock and canal company of New York which were bequeathed to the plaintiff Walton, and which in the lifetime of the testator, by some arrangement, were increased to the number of six. The stock, under an act of the legislature, had become vested in the state and a certain sum was to be paid to the stockholders as compensation for its value. It was held that the legacy was not adeemed or extinguished by these transactions and the legatee entitled to the avails of the six shares.

The following cases are to the same effect: *In re Clifford,* 81 Law Jrnl Reps NS (Ch Div 1912), 220, 223; *In re Leeming,* 81 Law Jrnl Reps, supra, 453, 454; *Fidelity Title & Trust Co. v. Young,* 101 Conn 359, 125 A 871, where a bequest of 150 shares was, before testator's death, split into 750 shares; *In re Martin's Will,* 252 NY 582, 170 NE 151 (1929), involved a bequest of 40 shares expanded to 160 shares; *In re Mandelle's Estate,* 252 Mich 375, 233 NW 230, 232 (1930), where the split was in the ratio of one stock of $25 par value for 5 shares of no-par, and it was held there was no ademption and that legatee of specific bequest took the increase in shares, following *In re Martin's Will* (NY), supra; *Chase National Bank v. Deichmiller,* 107 NJ Eq 379, 152 A 697, 699 (1930) holding that testamentary provision of a given number of shares of stock

was a specific bequest and that legatee in absence of a contrary intention found within the will, took not only the original 800 shares designated, but 3,000 to which the 800 had been increased during life of testator; *Heckler v. Young*, 264 Ill App 34, 42 (1931), where it was said: "* * * a stock split-up in shares, without a change in the comparative interest in the corporation is merely a change in form and does not cause a change in the nature of the shares thus effected"; *In re Hicks' Will*, 272 App Div 594, 74 NYS2d 246, 248, affirmed without opinion 79 NE 2d 747 (1947); *Adams v. Conqueror Trust Co.*, 358 Mo 763, 217 SW2d 476, 480 (1949); *In re Vail's Estate*, 67 S2d 665, 667 (1953); *Gorham v. Chadwick*, 135 Me 479, 200 A 500 (1938). Also see annotations re "split-ups" 172 ALR 371.

The position of the respondents is: "* * * that new shares of stock go to the residuary legatees unless the new shares are received as *substitutes in exchange* for the old shares, or there is other evidence of intention on the part of the testatrix to bequeath a certain value or proportional interest in a corporation to the specific legatee. * * *" (Emphasis ours.)

Stock splits are generally accomplished in two different ways. If the stock is of the par value type, then the original certificate is exchanged and a new certificate substituted, embodying the original shares, plus the new number of shares authorized by the split. But if it is non-par stock to be split, then the stockholder, as did Mrs. Rees, retains her original certificate and receives additional certificates for the additional shares. This had the effect of diluting the value of each share owned by her, including the additional fifty, but not to a point below what would have been the value of her original 25 if there had been no "split-up." But when there is a split of non-par stock, there is no neces-

sity for making "substitutes in exchange" as is the method of implementing a split of par value shares.

■■ Respondents' premise intimates that unless the split is attended by an exchange of "old shares" for "new substitutes" that any additional shares which may come to a stockholder as a result of an authorized "split" must be treated as a part of the residuary estate unless there is other evidence (we assume aside from the specific bequest) of the testator's intention to bequeath the additional 50 shares to the specific legatee. In short, as we understand respondents' position, they would concede that if Mrs. Rees had owned 25 shares of United States Steel with a par value and had exchanged her certificate for that many shares for a new certificate of 75 shares, in evidence of the split, there could be no question but that the 75 shares would pass to Mr. Fisher as legatee. To use respondents' language, the "old shares" would be *exchanged* and substituted for "new shares." The language thus employed is unfortunate. A more accurate statement, in our opinion, would be, in such a case, an "old certificate" for 25 shares would be substituted by receiving a "new certificate" evidencing the same "old shares" in a new form, that is, as 75 instead of 25, but without gain or loss in value to the stockholder.

But, if we correctly follow respondents' thesis, where there is a stock split of non-par stock, as here, but with no surrender or *exchange* of the original certificate for 25 shares and the split is accomplished by the corporation handing the stockholder, as it did, another certificate for 50 additional non-par shares, although the aggregate of 75 shares has no greater value than the original 25 non-par shares before the split was made, then, and in that event (unless there is "other evidence of intention on the part of the testa-

trix to bequeath a certain value or proportionate interest in the corporation to the specific legatee''), the additional fifty shares, because of the absence of the element of an *exchange of certificates* in the implementation of this split, the specific bequest would not include the additional shares and such shares would become a part of the residue of the estate.

In our opinion, the respondents' argument is without merit for many reasons: (1) It gives a different and special status to stock of par value over stock of non-par value, even though in a specific bequest the non-par stock may include numerically the same number of shares in the same corporation and, at the time of split, have the same market value as the par value stock, if any; (2) It is a thesis contrary to the prevailing rule and the many cases cited in support of that rule; and (3) It is a proposition overemphasizing the importance of form in the implementation of the result at the expense of substance. In a stock split, whether of par value or non-par value stock, one purpose of the spilt is to divide the original holding in more units or multiples of the same value without disturbing the stockholder's original proportional participating interest in the corporation. In Graham & Dodd, Security Analysis, supra, a text recognized by accountants of standing, we find under the caption "The Valuation of Common Stocks," at page 411, this informing statement:

> "*In the case of common stocks of no-par value,* a split-up or a stock dividend leads to exactly the same results, and to all practical purposes they are indistinguishable. Although a stock dividend requires the transfer of a certain sum on the books from surplus to capital, the infinite latitude in accounting permitted by no-par stock may make

this transfer a purely nominal affair.'' (Emphasis ours.)

Respondents' argument overlooks the distinctive criterion for determining what a stock split actually is. It is essentially one of form and not of substance. *In re Cummings' Will,* 200 Misc 322, 107 NYS2d 134; *In re Vail's Estate,* supra (67 S2d 667). The fundamental error in their reasoning, at least with reference to the splitting of non-par stock, lies in their failure to recognize the essential character of a certificate for corporate stock. Stock certificates are not stock, but merely evidences the ownership of the stockholder's proportional interest in the corporation. 18 CJS 621, Corporations § 194(b); *Budd v. Multnomah Street Ry. Co.,* 12 Or 271, 272, 7 P 99. Also see *Loveland & Co., Ltd. v. Doernbecher Mfg. Co.,* 149 Or 58, 74, 39 P2d 668. It follows, therefore, that Mrs. Rees' gift to her grandson by the third paragraph of her will was in fact only her proportional interest in United States Steel Corporation, which interest was neither enlarged nor diminished by the stock split, by the 50 additional shares which she subsequently received as evidence of the split.

Respondents argue there is no distinction between a stock split and stock dividend. The statement is not an accurate one and we foresee danger of confusion if it is blindly accepted. We recognize that in one fundamental aspect at least, a stock split and a stock dividend are alike in that they did not enlarge or disturb the corporate net worth. See *Stipe v. First National Bank of Portland* (1956), 208 Or 251 301 P2d 175, 186, which treats with the character and financial attributes of a stock dividend.

Nor are we persuaded by respondents' argument that the cases wherein a stock dividend, received after

making of a will and before testator's death, is always treated as a part of the residuary estate, are authority for according like character with a like result to a stock split.

The reason why split stock remains a part of the specific legacy and a stock dividend, under the circumstances here present, passes to the residuary estate is due to the fact that a stock split changes only the form of the bequest, while a stock dividend, being paid out of surplus and distributed to stockholders, is like any other dividend. *Griffith v. Adams,* 106 Conn, 19, 137 A 20, 23 (1927); *Hicks v. Kerr,* 132 Md 693, 104 A 426, 427; *Sherman v. Riley,* 43 RI 202, 110 A 629, 633.

Respondents bring to our attention but one case which is not in harmony with what we have hereinbefore said. We refer to *Davis v. Price,* 189 Tenn 555, 226 SW2d 290, which appears to be outside the current of authority because of a local statute. This is recognized by the court itself, at page 293, where it dispatches many of the cases we rely upon here in these words: "These cases are not in point, not helpful here, because they are not based on a statute such as that contained in [Tenn] Code sec 8133 * * *."

The order of the twenty-ninth day of December, 1954, wherein the executrices were directed to sell certificate X and divide the proceeds equally among the brothers and sisters of Almona B. Rees living at the time of her death, is the order from whence Mr. Fisher appeals. We view it as an amendment to the order approving executrices' final account and report directing distribution of the estate to the beneficiaries named in the will as made on the ninth day of June, 1954.

■ But an examination of the order of June ninth reveals it is wanting in certain required details, namely, that it fails to designate the respective amount, sum

or specific thing that is due each of the legatees, respectively, or the shares of the residue to which any may be entitled. See *In re Estate of Hemshorn,* 184 Or 364, 382 et seq, 198 P2d 597.

For these reasons, the order of December 29, 1954, is reversed and the order of June 9, 1954, is vacated, except in so far as it approves the final account of the respondent executrices, and the cause remanded for the entry of an order of distribution in accordance with this holding respecting the distribution of certificate X and the further provisions required by *In re Estate of Hemshorn,* supra.

Costs to neither party.

Reversed and remanded.