IRÉNÉE DUPONT, JR., CRAWFORD H. GREENEWALT and ERNEST N. MAY, as Executors of the Estate of Irénée duPont,
Plaintiffs,

*vs.*

IRÉNÉE DUPONT, JR., CRAWFORD H. GREENEWALT and ERNEST N. MAY, as Trustees under the Will of Irénée duPont, and IRÉNÉE DUPONT, JR., as Trustee of a Charitable Trust under a Deed of Trust dated December 25, 1947,
Defendants.

*New Castle, October 9, 1964.*

*S. Samuel Arsht* and *David A. Drexler*, of Morris, Nichols, Arsht & Tunnell, Wilmington, for plaintiffs.

*S. Samuel Arsht* and *David A. Drexler*, of Morris, Nichols, Arsht & Tunnell, Wilmington, for defendants Irénée duPont, Jr., Crawford H. Greenewalt, Ernest N. May, as Trustees under the Will of Irenee duPont.

*Clair John Killoran*, of Killoran & VanBrunt, Wilmington, for defendant, Irénée duPont, Jr., as Trustee for a Charitable Trust under a Deed of Trust dated December 25, 1947.

SEITZ, Chancellor: This case raises an important legal issue of first impression in Delaware. Plaintiffs as executors of the estate of Irenee duPont ("testator") filed a complaint seeking instructions as to the proper distribution of the proceeds of sales of certain General Motors ("GM") stock held by them ($6,108,785.63). They joined as defendants the trustees under the residuary clause of the will ("residuary trustees") and the trustee of an inter vivos charitable trust created by the testator under a deed of trust dated December 25, 1947 ("charitable trustee"). In due course both defendants answered and claimed the funds and filed cross-motions for judgment on the pleadings. The answers and motions admitted every factual allegation. In addition the parties filed certain factual stipulations. I shall therefore treat the motions as motions for summary judgment. This is the decision thereon.

On August 12, 1948, the testator executed his last will. Under the residuary clause of his will he left the bulk of his large estate in trust for the benefit of his children for their respective lives with a further provision disposing of the remainder to his grandchildren per stirpes. On August 24, 1950 the testator advised his counsel in writing that he wanted "some sort of provision which could be used to continue the work of the Biochemical Research Foundation" ("Foundation") after his death. He was admittedly very much interested in its work concerning cancer research and indeed was presumably its financial "angel". To accomplish his objective, the testator directed his counsel to prepare a codicil whereby he bequeathed 2,000 shares of Christiana Securities stock ("Christiana") to the inter vivos charitable trust of

which his son was trustee. The codicil accomplishing this objective was executed on August 25, 1950. At that time the testator owned 7,301 shares of Christiana.

On March 10, 1961, Christiana split its stock 80 for 1.

On March 13, 1961, the testator executed a second codicil to his will replacing his earlier legacy to the charitable trust with a bequest of 160,000 shares of Christiana. His codicil recognizes the split as the reason for the change in the number of shares made subject to the legacy.

In order to understand the present dispute it is necessary to refer to an anti-trust suit filed by the U. S. Government against the DuPont Company arising out of its ownership of 23% of GM's outstanding common stock. I note parenthetically that a very large part of the value of Christiana stock arises from its ownership of DuPont Company stock. The U. S. Supreme Court found a violation but it was not until its opinion of May 22, 1961 that the trial court was directed to enter an order equitably divesting the DuPont Company of its GM stock and requiring Christiana and the duPont family to dispose of any shares received. The final judgment ordering divestiture as amended was filed on April 26, 1962.

On July 9, 1962, Christiana received from the DuPont Company a portion of its GM stock in implementation of the divestiture order. Christiana in turn distributed such stock to its stockholders. This delivery of November 14, 1962, included a distribution of 180,800 shares of GM stock to the testator. This represented the testator's proportionate interest in the particular distribution based on his stock ownership of Christiana. Pursuant to the requirement of the anti-trust decree, the testator's shares were sold. The proceeds were deposited in his bank account on November 20, 1962.

On November 20, 1962, the testator's physician executed an affidavit which was used in a petition for the appointment of guardians for the testator. That affidavit recited in part:

"especially in the last few months, Mr. duPont has become increasingly disabled because of senility and osteoarthritic changes.

* * * He is now so disabled by these infirmities that he cannot in any way take care of himself, take care of any personal affairs, transact business or take any part in the conduct of his own household. He is totally disabled, and the prognosis is poor."

On December 31, 1962, this court appointed guardians for the testator to take care of his estate.

On November 18, 1963, Christiana announced a further distribution of GM stock which it received from the DuPont Company pursuant to the anti-trust decree. The sale of such stock did not take place until after the testator's death on December 19, 1963, but the parties agree this is not significant. It is also important to keep in mind and both parties concede that while the case now deals with the proceeds of the sales of GM stock the issue must be decided as though the GM stock rather than the proceeds of such sales is involved.

The executors request for instructions requires this court to decide whether the proceeds of the sales of GM stock pass under the residuary clause of the testator's will to the testamentary trust or whether they pass under the legacy of Christiana stock to the inter vivos charitable trust. The charitable trustee contends that all distributions of GM stock made by Christiana which are allocable to the Christiana bequest, follow the Christiana shares to the charitable trustee. The residuary trustees argue that under the facts the GM stock distributed to date by Christiana "detached" from the Christiana shares prior to the testator's death and upon his death passed under the residuary clause to the residuary trustees, whether the charitable legacy provision of the will be considered a specific or a general legacy.

■ ■ Before considering the basic contentions of the parties a few preliminary observations are in order. While the will was operative as of the date of death, the process of ascertaining the testator's intent permits inquiry into the knowledge possessed by the testator when he made his will. For this purpose the testator's letter to his counsel concerning the Foundation is admissible. The testamentary trustees say that under Delaware law intention is "measured immediately before death and not at the date of the will", citing *Bird v. Wilmington Soc. of Fine Arts*, 28 *Del.Ch.* 449, 43 *A.2d* 476. Whatever

counsel may mean by the use of the term "measured", I am confident that the Bird case supports my conclusion concerning the admissibility of evidence of surrounding circumstances known to the testator when he executed his will and codicils.

I also point out that it was only because of the divestiture order that the GM stock of the DuPont Company passed through Christiana to the testator and was in turn sold for his benefit. This happened after the execution of the last codicil and after the testator's testamentary capacity could be open to doubt. Whether these are matters of moment is dealt with later.

Turning now to matters of substance, I commence with the admitted proposition that whether the GM stock "allocable" to the Christiana shares bequeathed to the charitable trust passed as part of such legacy is a question of intent.

Before discussing the intent reflected in the will and codicils I think it helpful to consider some of the general case law in this field. In most of the reported cases the courts were confronted with stock splits made or stock dividends in the company's own stock declared after the execution of a will but before the testator's death. Most of the stock split cases reach the conclusion, on various theories, that the split shares pass under the legacy. 172 *A.L.R.* 364, 370. In contrast, most of the stock dividend cases decide that such dividends do not pass with the legacy. 172 *A.L.R.* 364. While nearly all such courts seem to agree that they are seeking to ascertain the testator's intent, it is not always clear that the factors considered are relevant to such a search. For example, how does a 100% stock dividend differ from a 2 for 1 stock split insofar as the implementation of a testator's intention is concerned?

Thus, undue reliance on the nature of the transaction, e. g., whether a stock dividend or a stock split, would seem to lose sight of the dominant objective—finding the testator's intent. By parity of reasoning it does not assist materially in deciding this case to determine whether the GM stock received by the testator should be categorized as a "dividend" or in the nature of a capital distribution arising from a partial liquidation. I think the same can be said of any attempt to

label the legacy to the charitable trust as general or specific. Compare *Allen v. National Bank of Austin*, 19 *Ill.App.2d* 149, 153 *N.E.2d* 260.

■ It is appropriate in ascertaining intent to consider first the situation that confronted this testator at various times here pertinent. In this way we can construe the provisions of the will in the light of the facts presumably known to him.

The testator's first codicil provided that "First, I give and bequeath unto '[the charitable trustee]' 2,000 shares of the common corporate stock of Christiana * *". Considering this language with the communicated information concerning the Foundation it is clear that the testator wanted to give a substantial part of his Christiana holdings to the charitable trust so that the trustee, if he saw fit, might cause the work of the Foundation to be continued. When he executed his first codicil August 25, 1950 bequeathing 2,000 shares of Christiana to the charitable trust he had a total of 7,301 such shares. The 2,000 shares then had a market value of $10,400,000.

The testator's holdings in Christiana had been reduced to 6,780 shares by the time of the 80 for 1 split on March 10, 1961. When the testator executed his second codicil on March 13, 1961 he bequeathed 160,000 shares of his total Christiana holdings of 542,400 to the charitable trust. These 160,000 shares were then worth $31,680,000. Thus, if we were dealing with a later distribution of Christiana shares to its stockholders the testator's execution of the second codicil would be important evidence in ascertaining the testator's intent. Is the situation materially different because a distribution by Christiana to the testator of GM stock is involved? The testamentary trustees emphasize that the GM stock was distributed after the testator executed his will and codicils. Thus, they say it is most unlikely that he intended the legacy of Christiana shares to embrace GM shares not then even owned by Christiana. Certainly the fact that the stock was received after the execution of the last codicil is not decisive. Indeed, there would be no problem had it been received prior thereto because there would have been a republication of the will. This factor points up the basic problem in this area.

■ A testator's intention is presumably reflected in the last testamentary instrument executed by him. Yet we know that in certain cases the courts have determined that stock received after the execution of a will "on" stock held at that time and which is the subject of a legacy (e. g., by the way of a stock split) follows the legacy. Under one view this is so because there is only a change in form while the substance of the gift is preserved. Compare In re *Brann,* 219 *N.Y.* 263, 114 *N.E.* 404, *L.R.A.* 1918*B,* 663. Other courts adopt the theory that the testator's intent with respect to the subject matter of a paricular stock legacy embraces what for want of a better expression may be called the proportionate corporate interest evidenced by the shares bequeathed. Compare, e. g., *Allen v. National Bank of Austin,* above; *Chase National Bank v. Deichmiller,* 107 *N.J.Eq.* 379, 152 *A.* 697. Thus, when new shares are issued either by way of a stock split or a stock dividend it is held by such courts that they merely represent the stock interest bequeathed and must pass with the particular legacy in order that the testator's general intent may be carried out.

What is the situation when the stock involved is an underlying asset rather than stock of the same company whose shares are the subject matter of the legacy? There appear to be few cases in this area. The two leading cases relied upon by the testamentary trustees are In re Brann, above, and *Griffith v. Adams,* 106 *Conn.* 19, 137 *A.* 20.

The opinion in the Brann case was written by Justice Cardozo for the New York Court of Appeals. It dealt with a specific legacy of Standard Oil stock. During her lifetime but after the execution of her will the testatrix there received stocks of other companies which were owned by Standard but which it was required to distribute under an anti-trust decree. While the court could have disposed of the case solely on the ground that the testatrix republished her will after receipt of the underlying shares, which it did decide, the court also ruled that the shares distributed to the testator by virtue of her Standard holdings did not follow the legacy because it could not find a "substantial identity between this extraordinary dividend and the shares from which they came". Although one may agree with the result, I do not dispose of the present case on the basis of this aspect of the Brann opinion be-

cause I think it places undue stress on form in seeking to ascertain intent.

The Griffith case is difficult to categorize but, in any event, it is clear that the court there found from the evidence, with justification, that the testator did not intend a stock legacy to embrace a dividend received from the corporation in his lifetime in the form of a stock of another company held by it.

Returning to the testamentary instruments, I conclude that it cannot be said under the wording of such documents, even when considered with the pertinent surrounding circumstances, that the testator fairly expressed a specific intent with respect to the GM shares received after the execution of the codicils. Consequently, we can only look to the general expression of intent concerning the legacy contained in the codicils and the pertinent circumstances to see whether the testator's intent will be substantially frustrated if the GM stock does not follow the Christiana legacy. Assuming that a finding of such frustration would justify the court in determining that the legacy would be held to embrace the GM stock, is such a finding justified here?

While it might be argued that we seek the testator's intent at the time he executed his second codicil and not thereafter, the fact is that unless cognizance is taken of subsequent events the charitable trustee would have no basis for a claim. This is so because the codicil speaks only of a legacy of Christiana shares. Thus, subsequent events are pertinent if there is to be a determination of the issue concerning the possible frustration of the expressed testamentary intent. What do they show?

Despite the intervening $6,000,000 GM stock distributions, both the Christiana shares and the DuPont Company shares held by Chrisitana were worth much more at the date of the testator's death (December 19, 1963) than when he executed his second codicil in 1961. The GM stock distributions, viewed absolutely, were indeed of substantial value ($6,108,000). However, they lose much of their testamentary significance when compared with the total value of the Christiana legacy to the charitable trust at the date of the testator's death ($37,600,000)?

One may assume that the Christiana stock legacy would have been even more valuable had the GM distribution not taken place. However, as noted, the value of the charitable legacy without the GM proceeds was much greater at the testator's death than when the codicil containing the legacy was executed. This fact renders it difficult to say that his charitable interest can only be satisfied by passing the GM proceeds. In a sense this situation requires the court to consider the practical difficulties inherent in isolating at death the "same" interest in a legacy as existed when the will was drawn, perhaps many years before. Considering this matter in the context of a need to find a substantial frustration of the testator's intent in order for the charitable trustee to succeed, I am forced to find that the facts do not warrant such a conclusion here.

One cannot generalize in this type of case because one can reasonably conceive of a corporate distribution of an underlying stock asset which would nullify a testator's intent with respect to a bequest of the distributing corporation's stock unless such shares were embraced within the legacy. But that is not the case here when we consider the language of the second codicil in the light of a comparison of values at the date of the execution of the codicils with those at the date of death.

I conclude that the legacy to the charitable trust did not embrace the GM stock distributions made by Christiana. It follows that the proceeds of sale pass to the testamentary trustees.

Present order on notice.