Hillsborough Probate Court,
No. 5951.

## In re William H. Doonan Estate.

February 27, 1970.

*Charles J. Lincoln* ( by brief and orally ), for Evelyn M. Clow and Howard B. Clow.

*McLane, Carleton, Graf, Greene & Brown* and *Charles G. Douglas III* ( *Mr. Douglas* orally ), for Kenneth C. Doonan, individually and as executor.

Duncan, J.   The acting judge of probate for Hillsborough County ( *Galanes*, J. ) as a result of a pending petition, certified to this court under RSA 547:30 the following questions:

"1.   Is the legatee of a specific number of shares of stock stated in the will entitled to receive the increased number of shares of stock resulting from stock splits received since the execution of the will and prior to death.

"2.   Is the legatee of a specific number of shares of stock stated in the will entitled to receive stock declared as dividends and received since the execution of the will and prior to death."

The questions involve construction of the will of William H. Doonan, late of Greenville, a widower, who died on November 6, 1965 at the age of 91. He was survived by his adopted son, whom his will made residuary legatee and executor. The testator, who was a layman and not a lawyer, drew the will himself, and it was duly executed under date of January 7, 1952. Doonan was a substantial citizen, who had been a legislator, town moderator, deputy sheriff, justice of the peace, and savings bank president. He had long been active in the drafting of wills and deeds, and the settlement of estates. He left a substantial estate

appraised at close to $140,000, of which more than $111,000 was in securities. Beside naming Kenneth C. Doonan residuary legatee, his will provided for several modest pecuniary legacies to charities, and bequests to Howard and Evelyn Clow, who are brother and sister of Kenneth.

The parties are all children of a cousin of the testator's deceased wife. All of them came at various times and at early ages to live with the Doonans in Greenville. Kenneth was adopted by the Doonans in 1914, when he was four years old, and he was brought up as their only child. Howard, who is two years younger, came to live with the Doonans in 1919 at the age of seven, and left the Doonan home in 1937. He married, continued to live in Greenville, and did some of the outside work about the Doonan home. Evelyn is four years younger than Kenneth. She came to live with the Doonans in 1924. She was graduated from the University of New Hampshire in 1938 and for a brief time was employed by the telephone company. After Mrs. Doonan died in 1940, Evelyn, who was unmarried, devoted her time to keeping house for Mr. Doonan.

Kenneth had a college education and in 1940 accepted employment with the federal government. In 1947 he established a home in Melrose, Massachusetts where he continued to live with his wife and children. He was accustomed to visiting back and forth with his father up to the date of his father's death, and to assisting him by typing deeds and wills which the father drafted for others. Kenneth was forty-two years of age when the will was executed in 1952.

By his will Doonan bequeathed to Evelyn Clow "any and all furniture" and "any automobile" which he might "own at the time of my decease." By the same clause he also bequeathed to her:

"157 Shares of N. H. Fire Insurance Co. Stock
528 Shares of National Container Corporation Stock
 77 Shares of Public Service Co. of N. H. Stock
 80 Shares of Merrimack Farmers Exchange Stock
 20 Shares of So. Pacific R. R. Stock"

He bequeathed to Howard Clow his garden tractor, "whatever truck I own at the time of my decease" and "a block of one hundred shares of New Hampshire Fire Insurance Co. stock." The residue he bequeathed to Kenneth C. Doonan, describing him

as "my adopted son." He directed that "all inheritance taxes be paid from the residue of the estate selling some of the small blocks of stock if necessary."

At the time the will was made the testator held a substantial number of securities. They included the exact number of shares of Public Service Co., Merrimack Farmers Exchange, and Southern Pacific Railroad, which he bequeathed to Evelyn; 553 shares of National Container Corporation, and 357 shares of New Hampshire Fire Insurance Co.

Both before and after the will was executed, the testator had purchased other stock for Evelyn in sufficient quantity to yield an annual return of about $1,000. He also had given her a savings account of $15,000, and two joint accounts totaling over $8,000. In addition, he had deeded his residence to her and given her a bill of sale of his furniture. He gave Howard $500 when Howard bought his home. Although he had loaned some funds to Kenneth at various times, he made no gift to him except by will.

The first account of the executor was allowed in January 1968. It shows transfer to Evelyn of the securities specified by the will having a value of $27,096.22, and to Howard, of one hundred shares of New Hampshire Insurance Co. at a value of $3,244. Inheritance taxes aggregating $19,072.19 have been paid, and the executor is charged with a balance of $77,440.31.

Between January 7, 1952 and 1961, the testator received 43 additional shares of New Hampshire Fire as stock dividends. In 1962 he received 400 additional shares as a result of a stock split. Thus, at his death he had on hand 800 shares of this stock.

In 1956, National Container Corporation merged with Owens-Illinois. The testator then held 553 shares of National Container and received in exchange therefor in Owens-Illinois stock, 139 shares of common, and 111.4425 shares of preferred. In 1965, he received an additional 139 shares of common in a split, so that at his death he held 278 shares of common, and 111 shares of preferred.

In 1954 a stock split gave the testator 77 additional shares of Public Service of New Hampshire, and at some time after the will was made he bought 70 additional shares, thus having a total of 224 shares in 1965.

In August 1952, the Southern Pacific Railroad stock split 2-1

and in 1959, 3-1, producing 100 additional shares, or a total of 120 at the testator's decease.

The answers to the certified questions are to be determined "like other questions arising upon the construction of a will . . . [by] the testator's intention as expressed in the will . . . . The situation of the testator, the surrounding circumstances, his family and relatives, the devisees and legatees, the nature, amount, and situation of his property, facts tending to place the court in the position of the testator, constitute evidence competent for our consideration upon the issue of what he meant by the words used." *Parsons*, J., in *Stratton* v. *Stratton*, 68 N. H. 582, 585-586, 44 A. 699. *See also, Pettee* v. *Chapter*, 86 N. H. 419, 426, 170 A.1, 171 A. 441; *Amoskeag Trust Company* v. *Haskell*, 96 N. H. 89, 70 A.2d 210, 71 A.2d 408; Paulus, Special and General Legacies of Securities-Whither Testator's Intent, 43 Iowa L. Rev. 467, 476.

Counsel for the Clows argues that since the bequests to them disposed, for the most part, of all of the securities of the specified companies then owned by the testator, their bequests should be considered to be specific rather than general bequests. *Jewell* v. *Appolonio*, 75 N. H. 317, 74 A. 250; *Drake* v. *True*, 72 N. H. 322, 56 A. 749. *See also, Igoe* v. *Darby*, 343 Mass. 145, 177 N. E. 2d 676. Counsel then argues that since stock splits commonly cause no change in the dollar value of the stockholder's equity, or in the capital of the company or its retained earnings, the additional shares which came to the testator by way of stock splits after the will was made must have been intended to go to the specific legatees, in order that they should receive the same relative interests in the companies as they would have had the will taken effect in 1952. *See Igoe* v. *Darby, supra,* 149; 5 Page on Wills ( Bowe-Parker Rev. ) *s.* 39.8 ( supp ). Counsel recognizes that cash dividends declared after the execution of a will but before death ordinarily do not become the property of the legatee, in the absence of testamentary provision that they shall. He argues, however, that stock dividends should stand upon a different footing, since the capital which they represent "still remains the property of the company, and subject to business risks . . . . " *Eisner* v. *Macomber*, 252 U. S. 189, 211, 64 L. Ed 521, 40 S. Ct. 189.

On behalf of the residuary legatee, it is argued that the testator

intended the bequests to the Clows to be only of the shares enumerated in the will. *First National Bank* v. *Union Hospital,* 281 Mass. 64, 183 N. E. 247; *McGuinness* v. *Bates,* 345 Mass. 632, 189 N. E. 2d 212. His counsel point out that the will was designed to favor the testator's adopted son, since the decedent at the time owned securities of more than thirty-five different issues, and since he made no change in his will in the thirteen years preceding his death although well aware of the additional shares which he received in splits and dividends in these interven- ing years. Emphasis is also placed upon the evidence that the testator was familiar with the effect of inheritance taxes on an estate, and provided for their payment from the residue of his estate; and that by his *inter vivos* gifts to Evelyn he avoided tax on a substantial portion of the property which he intended her to have.

We consider that the issues presented are not to be decided merely by applying the rubric of "specific" or "general" to the Clow legacies and by attaching consequences thought to follow automatically from that determination. *See* Annots. 7 A. L. R. 2d 276; 172 A. L. R. 364; *Egavian* v. *Egavian,* 102 R. I. 740, 232 A. 2d 789; 6 Page on Wills (Bowe-Parker Rev.) *ss.* 48.6, 59.18. *Cf. Young* v. *Dunton,* 106 N. H. 249, 252, 209 A. 2d 719. The testator's intention that the Clows should have the securities specifically designated by his will is abundantly clear. That he intended that Evelyn should take shares of Owens- Illinois stock exchanged for the shares of National Container left her by the will so that this legacy should not be adeemed (*Ford* v. *Ford,* 23 N. H. 212, 219) is apparently considered a reasonable conclusion by all parties, since such securities have been delivered to and accepted by her. *See Gardner* v. *Gardner,* 72 N. H. 257, 56 A. 316; *Warren* v. *Shoemaker* (Ohio Prob. Ct.), 207 N. E. 2d 419.

Stock dividends ordinarily do not pass to a legatee of specific shares, in the absence of express provision that they shall. 6 Page on Wills (Bowe-Parker Rev.) *s.* 59.18, *supra*; 1 Casner, Estate Planning (3d *ed.*) *p.* 274, *n.* 20, and 1969 supplement. *See Matter of Howe,* 12 N. Y. 2d 870, 871. While stock dividends and stock splits need not necessarily be treated alike (*Matter of Howe, supra*; *Fisher* v. *Paine,* 210 Ore. 429, 311 P. 2d 438; Casner, 1969 supp., *supra*) we see no reason in this case to

make a distinction between them. Nothing in the record suggests that the testator allowed his will to remain unchanged over the years in which he received additional shares because of reliance on any supposed legal principle in this State which would cause any of them to pass automatically to the legatees to whom he left his original holdings.

In the light of the circumstances, including the testator's largesses to Evelyn during his lifetime, we are of the opinion that he must have intended that Evelyn and Howard should receive the securities specified by his will, but that accretions to his holdings by stock dividends and splits should go to his adopted son as a part of the residue charged with payment of inheritance taxes. *McGuinness* v. *Bates, supra; Woodward Estate*, 407 Pa. 638, 182 A. 2d 732; *Greathead Estate*, 428 Pa. 553, 236 A. 2d 224.

An article in 6 N. H. B. J. 93, has sounded a warning that legacies of such intangibles as shares of stock in named corporations may be affected by "stock dividends, splits, spin-offs and other distributions," in such a way as to "frustrate the testator's intentions." Orr, Some Practical Aspects of Preparing Wills, *Id.*, 96. *See also, Id. p.* 99; *duPont* v. *duPont*, 42 Del. Ch. 75, 203 A. 2d 840; *Marks Will*, 435 Pa. 155, 255 A. 2d 512. In *Roberts* v. *Tamworth*, 96 N. H. 223, 225, 73 A. 2d 119, it was said: "If the testatrix did not think about the matter, it is difficult to say that she had an intent with respect to it."

In the case before us, we think it probable that the testator did think about the shares which he acquired after his will was executed, and that he concluded that they should go to his residuary legatee. Accordingly, the answer to both certified questions is that the Clows, as legatees of specific numbers of shares of stock bequeathed by the Doonan will, are not entitled to additional shares issued to the testator after execution of the will as a result of stock splits and the declaration of stock dividends.

*Remanded.*

GRIFFITH, J., did not sit; the others concurred.