MARIE P. DESOE & another, executors, *vs.* MARIE P. DESOE & another.

Hampden.    September 21, 1939. — October 27, 1939.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Devise and Legacy*, General or specific, Construction of particular phrase.

In the circumstances, an executor properly was instructed that the testator, who, when he made his will, owned sixty-four shares of stock of a certain corporation and in his will directed that fifty-four shares of stock of that corporation be given to his wife, intended the bequest to be specific and not general, so that, when on his death he owned but forty-three shares of the stock, the widow was entitled only to those shares.

A provision in a will, construed in the light of a prenuptial agreement of the testator with his intended wife made four years earlier, that part of $15,000 given to her was a certain parcel of real estate "included as the equivalent of $11,000" was clear and unambiguous, and she was not entitled to have paid to her the difference between $11,000 and the value to which the real estate had depreciated at the time of the testator's death.

PETITION, filed in the Probate Court for the county of Hampden on November 14, 1938, for instructions.

The case was heard by *Denison*, J., and in this court was submitted on briefs.

*D. M. Macaulay*, for the respondent Marie P. Desoe.

*F. Auchter*, for the respondent Roland E. Desoe.

DOLAN, J.  This is a petition in equity in which the executors of the will of Edward G. Desoe, late of Springfield, deceased, seek instructions as to their duties.  The case comes before us upon the appeal of the respondent Marie P. Desoe, who is the widow of the testator, from the decree entered by the judge.  The evidence is reported.

The testator married the respondent Marie on October 18, 1928. On the day prior to their marriage they executed an antenuptial agreement under the terms of which the testator agreed as follows: "It is to be provided that, should Marie P. Stark [now Desoe] survive Edward G. Desoe, that after paying funerel [*sic*] expenses and all debts that the remainder of his estate, up to fifteen thousand dollars ($15000.00), goes to Marie P. Stark. This is to include the property at No. 52 Perkins street Springfield, Mass. at eleven thousand dollars free of mortgage, and the balance four thousand dollars, ($4000.00) in cash." Other provisions, therein agreed to be made for the respondent Marie, concerned automobiles, household goods, jewelry, and other personalty with certain immaterial exceptions. Provision was also to be made by the testator in his will that should his son by a former marriage, the respondent Roland E. Desoe, predecease the respondent Marie, one half of the remaining estate inherited by his son from the testator should go to the respondent Marie, provided the testator's son "does not leave a legal issue, and also providing that Marie P. Stark has not again married."

At the time of the execution of this agreement and down to a short time before the testator executed his will on October 13, 1932, it was the understanding of the testator and of the respondent Marie that upon his decease she would receive a pension from his employer of $600 annually. However, in 1931 or 1932, when the testator was about to be retired under a pension plan, they found upon inquiry that since at the time fixed for the testator's retirement his wife would not have been married to him for a period of five years, she would not be entitled to this pension upon his death. The testator then decided to make his will and, in addition to the provisions agreed to in the antenuptial agreement, to give his wife fifty-four shares of the stock of the American Telephone and Telegraph Company, and fifty-two shares of the preferred stock of the United States Smelting and Refining Company. There was evidence that the testator wanted his wife to have "that much income," since, if she survived him, she would

not upon his death receive the pension which they had anticipated that she would receive. When the testator decided to make these bequests, and on October 13, 1932, the date of execution of his will, the testator owned sixty-four shares of the "Telephone" stock. There was evidence tending to show that at the time of the execution of the will the testator intended that the other ten 'shares of "Telephone" stock should go to his son.

By the terms of the third article of his will the testator provided as follows: "I give, bequeath and devise to my said wife, MARIE P. DESOE, from my estate, should she survive me, the sum of Fifteen Thousand ($15,000) Dollars, of which the sum of Four Thousand ($4,000) Dollars shall be in cash, and the balance in real estate situated at #52 Perkins Street in said Springfield, free of mortgages and included as the equivalent of Eleven Thousand ($11,000) Dollars. I also bequeath to my said wife, MARIE P. DESOE, fifty-four (54) shares of American Telephone & Telegraph Co. common stock, regardless of its market value, including all rights or proceeds from said rights accrued thereunder. I also bequeath to my said wife, MARIE P. DESOE, fifty-two (52) shares of United States Smelting & Refining Co. preferred stock."* The ninth and tenth articles read as follows: "9. Whereas by an ante-nuptial agreement, dated October 17, 1928, I relinquished certain interest in the estate of my said wife, MARIE P. DESOE, and she relinquished certain interest in mine, I now ratify said ante-nuptial agreement in every particular and declare that this will is to be construed with reference to said ante-nuptial agreement. 10. The fifty-four (54) shares of American Telephone & Telegraph Co. common stock mentioned in Paragraph #3 bequeathed to my said wife, MARIE P. DESOE, regardless of market value has reference to the present status of common stock, and it is my intention that in case of any split-up or division of said stock that the said fifty-four shares will be multiplied and increased in accordance with same. It being my intention that the said fifty-four shares as at

---

* By the sixth article of the will, the residue of the estate was given to the testator's son. — REPORTER.

present are to participate in any reorganization, split-up or division that may occur from the date of this will up to the time of settlement of my estate."

At the time of his death, on July 17, 1938, the testator owned but forty-three shares of the stock of the "Telephone" company, having sold twenty-one shares of that stock in November, 1934.

Two questions are presented for determination. The first is whether the respondent Marie "is entitled to fifty-four shares of . . . American Telephone & Telegraph Co. stock as bequeathed by said will or only to forty-three shares, the number owned and possessed by the testator at the time of his decease."

While ordinarily a gift of stock is general, yet an intent to make the gift specific may be shown; and, under the rule of construction, the testator's intent must prevail if it can be ascertained from the language of the whole will read in the light of the circumstances known to the testator at the time of its execution, and no positive rule of law forbids. *First National Bank of Boston* v. *Charlton,* 281 Mass. 72, 75. In *Thayer* v. *Paulding,* 200 Mass. 98, at page 101, it is said: "A very slight indication of an intention to give shares then in . . . [the testator's] ownership is enough to make the legacy specific in a case like this." In that case the testator owned three hundred seventy-five shares of certain stock when he executed his will and at his death. The legacy there involved was of one hundred twenty-five shares of the particular stock "together with all the rights and privileges which may now or hereafter appertain to the same." The court held that these words should be considered as referring to the shares of the stock then owned by the testator, and as requiring that they be set apart and at the end of the year turned over to the legatee with any income accruing from them after the testator's death; and that the legacy was specific.

In the instant case, notwithstanding the special circumstances hereinbefore recited as throwing light upon the intent of the testator, we think that, considering them with the provisions of the will as a whole, the testator in his be-

quest of the shares involved was not thinking in terms of shares of "Telephone" stock to be acquired upon his death in satisfaction of the legacy, but was thinking of the shares owned by him when he executed his will. His bequest to his wife of fifty-four shares, coupled with the intent that his son should have ten shares of stock of the same company, thus making a full disposition of the sixty-four shares then held by him gives weight to this view. Moreover, the testator was not content to leave his bequest of the telephone stock to be construed as expressed in the third article of his will without further description, although even in that article he spoke of all rights or proceeds from rights "accrued thereunder," which we take to mean, already accrued; but he took pains in the tenth article of his will to set forth in precise terms what he intended by the gift of the stock in question under the third paragraph of his will. He there refers to "the fifty-four shares" of the "Telephone" stock. He says the bequest of this stock in paragraph 3 (of his will) has reference to the present status of "common" stock, that it is his intention that the "said" fifty-four shares will be multiplied and increased in case of any split-up or division of "said" stock. He further states that it is his intention that the "said fifty-four shares as at present are to partici-. pate in any reorganization, split-up or division that may occur from the date of this will up to the time of settlement of my estate."

We think it would be a strain upon the natural meaning of the language used by the testator to take the view that he intended that upon his death fifty-four shares of the stock in question, or a sufficient number to make up fifty-four shares, should he dispose of all or any of them in his lifetime, were to be purchased by his executor and delivered to the respondent Marie, together with any other number by which fifty-four shares should have been augmented through split-ups or divisions, not taking place in the period for settlement of his estate, but dating back to the past as of the date of the execution of his will. We are of opinion that the words used by the testator are more pertinent to a gift of a specific legacy than to a gift of a general legacy, and

that, as decreed in the court below, the respondent Marie is entitled only to the forty-three shares of stock involved, which the testator owned at the time of his death.

The remaining question is whether under the bequest and devise to the respondent Marie of $15,000 under paragraph 3 of the will, she is entitled to be reimbursed in cash the difference between $11,000 mentioned in paragraph 3 and the sum of $7,800 at which the real estate referred to therein was appraised after the death of the testator. It appears that in June or July, 1928, when the testator and the respondent Marie were contemplating marriage, they "started looking for a house." The house at No. 52 Perkins Street was later in that year purchased by the testator for $11,000. The terms of the antenuptial agreement with respect to this property have already been set forth. Under those terms the testator agreed to leave his wife by will $15,000. It was expressly provided that this sum was to include the property at No. 52 Perkins Street at $11,000 free of mortgage, and the balance, $4,000, in cash. In his will in full compliance with this provision the testator, as before stated, bequeathed and devised to his "wife, MARIE P. DESOE," should she survive him, "the sum of Fifteen Thousand ($15,000) Dollars, of which the sum of Four Thousand ($4,000) Dollars shall be in cash, and the balance in real estate located at #52 Perkins Street in . . . Springfield, free of mortgages and included as the equivalent of Eleven Thousand ($11,000) Dollars." This language is clear and unambiguous. "To be equivalent to" means "to be equal in value," "to be the same," "corresponding to" and "to be worth." Eleven thousand dollars was the sum that the testator expended in the purchase of the real estate involved, it was the price at which he provided his wife should take it as a part of the legacy agreed to be made in the antenuptial agreement, contemporaneously with its purchase, and it was the value at which she was to take it under the terms of his will.

The decree entered in the Probate Court is affirmed. Costs and expenses of the appeal may be allowed in the discretion of that court.

*Ordered accordingly.*