JACK FEDER, LOUIS FEDER, HORTENCE GYLE, DOLLY SANDERSON, ETHEL GRAYSON, ESTATE OF DORA GOLDSTEIN, DECEASED, AND ELSIE GLASSNER, APPELLANTS, v. WILLIAM M. WEISSMAN AND ELLICE E. DAVIDOW, RESPONDENTS.

No. 4913

December 29, 1965

409 P.2d 251

[Rehearing denied January 26, 1966]

*Fry and Fry*, of Reno, and *Cerf, Robinson and Leland*, of San Francisco, for Appellants.

*William L. Hammersmith*, of Reno, for Respondents.

## O P I N I O N

By the Court, BADT, J.:

This is an appeal from an order granting final distribution of the estate of Rae L. Weissman, deceased. Specifically, the appeal is taken from the court's determination of the legal effect of Paragraphs Fourth to Tenth, inclusive, of the will of said testatrix.

The testatrix executed her will under date of September 19, 1962. In it she bequeathed "ten (10) shares of Union Oil of California" stock to each of seven legatees, appellants here. At the time of her death, on May 26, 1964, she did not own any of said stock. Her will was admitted to probate August 17, 1964.

On January 28, 1965, the attorney for the estate sent out a letter to all beneficiaries of stock under the will, stating that he regretted to inform them that there was no stock in the estate and, therefore, there could be no distribution of shares of stock thus bequeathed.

At the hearing of the first and final account and petition for distribution held February 26, 1965, appellants, beneficiaries of the seven bequests of 10 shares of Union Oil stock each, filed objections. No evidence was presented at the hearing, but a written memorandum of law

670

was submitted on behalf of each side on the question of law "where a bequest of 10 shares of stock is specific or general."

On March 2, 1965, the court filed its decree, settling the account of the executors, and ordered final distribution, which decree included no distribution to such legatees. This followed the holding of the district judge that the stock bequests were intended to be "specific" and had been adeemed by extinction. The legatees who were thus affected appeal.

Appellants' opening brief presents four questions: (1) the nature of the stock bequests; (2) whether they were adeemed; (3) who has the burden of proof in showing bequests are, in fact, adeemed; and (4) who has the burden in showing stock bequests are specific. Respondents reply that only the nature-of-the-bequests question was before the court in probate and thus only it can be the subject of appeal. Be that as it may, our eventual conclusion that the bequests are general, thus not adeemed, obviates the necessity of determining the other questions.

It should first be noted that although each bequest contains the identical words, "I give, devise and bequeath to * * * 10 shares of Union Oil of California stock," there were some significant variations. (1) To two of the seven legatees the testatrix bequeathed both the shares of stock and $500 cash. (2) The other five legatees were bequeathed only the stock. (3) Four of the seven stock bequests included an anti-lapse provision naming other legatees. (4) The remaining three bequests provided that should the principal legatees predecease testatrix, the stock would be evenly divided "among the surviving persons who have also been bequeathed 10 shares of Union Oil of California stock, and to no other beneficiaries named in this will."

A specific bequest is a gift of a specific article or portion of the testator's estate that is described by the will in a manner that distinguishes it from other articles of the same general nature. Atkinson, Wills, 732 (2nd Ed., 1953). A general bequest is a gift payable out of the

general assets of the estate not amounting to a bequest of a particular thing, money, or fund. Id. 733. The determination whether a bequest of securities is specific or general has become a matter of great complexity.[1]

The classification of bequests as "specific," "demonstrative," or "general" carries with it particular incidents of each classification. Specific bequests are adeemed by extinction; general bequests survive. Fidelity Title & Trust v. Young, 101 Conn. 359, 125 A. 871. Did Mrs. Weissman intend to bequeath her stock only on condition it was not otherwise disposed of before her death? Obviously, her will does not expressly provide. Instead, we are forced to rely on the various indicia of intent formulated through the years.

Whether a bequest of stock is specific or general becomes most pertinent in estate distribution where a subsequent event changes conditions which existed at the time the will was executed. These events take one of three forms: (1) accretion, where the stock described at execution has increased its value or number of shares by the time of distribution—i.e., through dividends or splits; (2) abatement, where the estate proves insufficient to meet outstanding debts and bequests must give way along a set order of priority; and (3) ademption, where the stock initially bequeathed no longer exists in the estate at time of distribution.[2]

Courts often say that "the law leans against specific legacies, and to general ones." In re Snyder's Estate, 217 Pa. 71, 66 A. 157 (1907). "But neither the preference of the law, nor the leaning of courts, extends to

[1] "When I recall what a multitude of judicial decisions I have, from time to time, examined in the investigation of the matter here to be passed upon, and consider how full of bewildering refinements and contradictions those decisions are, I can understand why Lord Thurlow held (a case involving classification of a securities bequest) under advisement for two years * * *." Matter of Hastings, 6 Dem. 307, 312 (Surr.Ct.N.Y. 1887).

[2] Generally, see Mechem, "Specific Legacies of Unspecific Things—Ashburner v. MacGuire Reconsidered," 87 U.Pa.L.Rev. 546 (1939); Note, 36 Calif.L.Rev. 338 (1948); Note, 23 Cornell L.Q. 639 (1938); Note, 42 B.U.L.Rev. 385 (1962).

cases where the intention of the testator can be satisfactorily ascertained." Foote v. Worthington, 39 Mass. (22 Pick) 299 (1839). The problem revolves around ascertaining that intent.

The instant case is one of first impression in this jurisdiction but this court has emphasized "that the cardinal rule of interpretation of wills is to ascertain the intention of the testator," Sharp v. First National Bank (Estate of Malone), 75 Nev. 355, 343 P.2d 572 (1959). We have even disclaimed reasonableness of a provision as a guide to the testator's intentions so long as the provision is valid and clearly shows such intention. Sarrazin v. First National Bank, 60 Nev. 414, 111 P.2d 49 (1941).

Here there is no clear showing of intent and we turn then to guidelines set forth by the majority of courts, while frankly recognizing the fact that there is no pure and exact logic to justify the guides thus fixed.

1. Probably the most uniform interpretation is given to words which indicate that the testator owns or possesses the securities in question at the time he executed the will. "A reference to securities as belonging to the testator, a reference which may be by the use of such word as 'my' or by some other expression which indicates ownership, shows that such bequest is specific." 4 Page, Wills § 1937, at 125 (Lifetime Ed. 1941). This distinction drawn between "my X shares" and simply "X shares" without the possessive, "seems to be at first sight a rather remarkable distinction, but such seems to be the rule adopted by the courts * * *." Norris v. Thomson, 15 N.J.Eq. 493, 495–496 (1863). No such terminology can be found in the instant case with reference to the stock bequests. Thus the trial court here could not have looked to the possessive words to find intent to make the stock bequests specific. Nor were there other phrases used in connection with the stock from which the court could come to such conclusion. No number appearing on the stock certificates was mentioned. There was no reference to total value, which under some circumstances has been held to indicate intent for specificity. Cf. In re Snyder's Estate, 217

Pa. 71, 66 A. 157 (1907). Nor was the *location* of the securities' depositary described. Cf. Heller v. National Bank of West Virginia, 33 F.Supp. 250 (1940). Nor was there any use of the phrase "rights and privileges" in connection with the stock. Cf. Desoe v. Desoe, 304 Mass. 231, 23 N.E.2d 82 (1939). Nor was the bequest framed as a fractional portion of testatrix' total holdings; it simply was stated in actual share numbers. Cf. In re Daly's Estate, 202 Cal. 284, 260 P. 296 (1927).

2.  Some courts have been quick to consider as specific a bequest of stock not readily obtainable on the open market. Thus In re Buck's Estate, 32 Cal.2d 372, 186 P.2d 708, 196 P.2d 769, the court said:

"* * * [T]he stock of the Belridge Oil Company has never been traded or listed on any stock exchange and there [have] been comparatively few sales of such stock. * * * The testator was a director of Belridge Oil Company and a trustee under the voting trust and was, of course, aware that the stock was closely held and not listed or traded on any stock exchange, and that it would be impossible to acquire additional shares except at a price disproportionate to their value."

The foregoing finds no application in the present situation, as Union Oil of California was widely traded and listed on the New York Stock Exchange.

3.  The courts are in conflict whether they should be influenced by the fact that the testator owned at the time of execution of his will the total number of shares he actually disposed of by his will. Tifft v. Porter, 8 N.Y. 516; also see 2 U. of Chi.L.Rev. 490 (1934). Perhaps it is logical to recognize in the identity of the amount owned and the amount given at least some indication of testamentary intent to make the bequest specific. However, such does not arise in the present case. The testatrix bequeathed only a portion of the shares she actually owned at time of execution. Thus even accepting such a test, such theory of the "correlation to total holdings" does not exist here.

4.  Apparently the strongest test upon which the trial court could have relied to find the testator's intent to make the bequests specific was the "mixed bequest"

test, in which testamentary intent has been gleaned from an individual legatee's receiving both stock and money. Under such circumstances it is sometimes presumed that the testator intended the bequest of stock to be specific.

"[W]here there is a bequest of stock and money, and the testator at the time of making his will owned stock of the kind bequeathed, such separation of the bequest into stocks and money has been considered as showing an intent to make the bequest of the stock specific. 18 Am. & Eng. Enc. Law (2d Ed.), p. 715; Douglass v. Douglass, 13 App.D.C. 21; Metcalf v. First Parish, 128 Mass. 370; Kermode v. McDonald, 3 Ch.Div. 584; White v. Winchester, 6 Pick. 48." New Albany Trust Co. v. Powell, 29 Ind.App. 494, 64 N.E. 640 (1902).

In the case of Fidelity National Bank & Trust Co. v. Hovey, 319 Mo. 192, 5 S.W.2d 437 (1928), the court quoted extensively from New Albany, supra, as well as other sources:

"In Kermode v. MacDonald, L.R. 3 ch. 584, 586, approvingly cited by Gray, C.J., in Metcalf v. Framingham Parish (128 Mass. 370), the testatrix by her will bequeathed to Mary Griffith the interest, profits, or produce of the sum of £300 British, or thereabouts, invested by testatrix in the General Steam Navigation Company, London, and also the interest of £200 British, for her life, and upon her decease the testatrix desired that 'the said principal sum of £500' should be equally divided among the children of Mary Griffith. Said Lord Cains, L.C.:

" 'It seems to me impossible to treat this legacy of £300 otherwise than as a specific legacy of the interest which the testatrix had in the General Steam Navigation Company. This is made clear by the contrast between this and the following bequest, which is intended to be a legacy in gross, and simply pecuniary.'

"In Douglass v. Douglass, 13 App.D.C. 21, 29, the testator by the third paragraph of his will bequeathed to his wife 'ten thousand dollars in registered United States bonds, and ten thousand dollars in lawful money, the latter to be derived from my other property not

mentioned in the foregoing.' It was ruled by the Court of Appeals of the District of Columbia that the bequest of the United States bonds was specific, and not general. Said that court:

" 'Conceding that the word "registered," as description of the bonds, would not necessarily render the legacy specific, and giving due weight to the omission of the specially descriptive "my," still, in our opinion, an intention to make the legacy specific appears from the immediately succeeding additional bequest of another $10,000 "in lawful money." Then, as if to render this indication of intention clear, the testator adds the remaining words of the sentence: "The latter to be derived from my other property not mentioned in the foregoing"; that is say, from property not before specifically bequeathed. Rejecting these last words, even, the separation of the two bequests into the bonds which he then possessed, on the one hand, and into money, on the other, considered in connection with the general scheme of the will, would, as intimated above, be sufficient of itself to indicate the intention to make the first one specific.' " (5 S.W.2d at 444).

The foregoing quotation is submitted as an illustration of what we have called the difficulty in following the reasoning under which the various tests of a specific or general legacy are applied. It does not, however, affect the conclusion reached by us. See the extensive article on stock bequests in 43 Iowa L.Rev. 467 (1958), where the author cites 13 cases in support of the "mixed bequest" test as an indication of testmentary intent to make the bequest specific. However, an analysis discloses that these cases had, in addition to a "mixed bequest," *other* features which could have led to a conclusion that a specific bequest was intended—or the case was primarily concerned with accretion or abatement, where courts generally lean toward specificity so as to favor designated legatees.

Here, the lone indication of intended specificity was in Mrs. Weissman's mixing two of the stock bequests with monetary gifts. Such mixtures in the same legatee are construed as effecting a distinction between the two assets: since a monetary gift is always general, the

bequest of stock is considered specific. However, the mixed nature of the two bequests here is the *only* evidence of specificity, and we emphasize the fact that just two of the seven bequests have even this mixture. "[W]e see no reason why the usual presumption that identical descriptive terms contained in the same will are intended to refer to the same subject-matter should not have its effect." Fidelity Title & Trust v. Young, 101 Conn. 359, 125 A. 871. There, one bequest contained an anti-ademption provision as to testator's wife and daughter while an otherwise identical bequest to a friend was bare. The court, considering disposition of a stock split, held both bequests specific. Here, all seven of Mrs. Weissman's stock bequests were identically worded. Five were bereft of any indicia of specificity; therefore they are general and not adeemed by extinction. We see no indication that Mrs. Weissman intended otherwise for the two mixed-bequests.

Finally, we note that all seven bequests of stock contained anti-lapse provisions which served to keep the shares from residuary legatees. Absent express wording contra, it seems incongruous that testatrix allowed for survival of her stock bequests in one condition—lapse —but intended to abandon the same bequests in the event of another condition—extinction. Had testatrix wanted to change or modify the stock bequests subsequent to execution she could have revoked or amended her will. This she did not do. It therefore seems reasonable under the instant facts to conclude she would have intended at execution that her stock bequests survive extinction.

Reversed.

THOMPSON, J., and ZENOFF, D. J., concur.

McNAMEE, C. J., being incapacitated, the Governor assigned Honorable David Zenoff of the Eighth Judicial District Court to sit in his place.