JAMES BOSTWICK, individually and as executor *vs.*
JOSEPH LEON HURSTEL & others.

Worcester.    February 7, 1973. — November 13, 1973.

Present: TAURO, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Devise and Legacy,* Gift of corporate stock, Ademption. *Evidence,*
Judicial notice.

Review of authorities dealing with the question whether a legatee of a
specified number of shares of corporate stock is entitled also to the addi-
tional shares received by the testator with respect to that number of
shares through one or more stock splits occurring in the interval between
the execution of the will and the testator's death. [285-292]

In the absence of anything in a will showing a contrary intent of the tes-
tator, a legatee of a specified number of shares of corporate stock is en-
titled also to the additional shares received by the testator with respect
to that number of shares through one or more stock splits occurring in
the interval between the execution of the will and the testator's death, ir-
respective of whether the bequest be classified as general or specific.
[287-292]

Where the stock of a corporation was split three for one and subsequently
two for one in the interval between the execution of a will containing a
bequest of 25 shares of the stock and the death of the testatrix, it was
held that certain provisions of the will and certain facts as to what the
testatrix had taken into consideration in making the will did not show
that she had intended that the legatee should receive only 25 of the
shares owned by her at her death and did show that she intended the
legatee to have the full value at the bequest, and that he was entitled to
receive an additional 125 shares. [292-294]

This court took judicial notice of the facts that each of two splits of cor-
porate stock was immediately followed by a corresponding fractional
drop in the sales price of the stock, and that rises in the price thereafter
occurred only over a period of years. [293-294, n. 3]

In the circumstances, where it appeared that a will contained a bequest of
some of the shares of corporate stock owned by the testatrix at the time
of its execution, that subsequently she sold all her shares, and that
thereafter her conservator purchased, and she owned at her death, more

than enough shares of the same stock to satisfy the bequest, it was held that there was no ademption thereof. [294-296]

PETITION filed in the Probate Court for the county of Worcester for allowance of an executor's accounts.

The case was heard by *Wahlstrom,* J.

*Edward D. Simsarian (Arthur L. Beaudette* with him) for the petitioner.

*C. A. Peairs (George K. Black* with him) for the respondents.

QUIRICO, J. This is an appeal by James Bostwick (Bostwick), executor and legatee under the will of Cecile Bostwick (the testatrix), from a decree of the Probate Court to the effect that a bequest in the testatrix's will of twenty-five shares of American Telephone and Telegraph Company (A. T. & T.) common stock to Bostwick was general and not specific, and disallowing a distribution to him of 125 additional shares of A. T. & T. stock resulting from two stock splits. The respondents are two nephews and a niece of the testatrix to whom she bequeathed all her remaining shares of the A. T. & T. stock not included in the bequest to Bostwick.

The will was executed on April 13, 1957. Clause First bequeathed to Bostwick "twenty-five (25) shares of stock in . . . [A. T. & T.] and also all household furniture and furnishings owned by me at the time of my death." Clause Second bequeathed to the respondent nephews and niece "all remaining shares of stock in . . . [A. T. & T.], which I may own at the time of my decease and which is not hereinbefore bequeathed under the First Paragraph of this Will." Clause Nineteenth of the will provides that if assets of the estate which have not been specifically bequeathed or devised under the will are insufficient to pay the debts, expenses of administration and taxes, a bank account specifically bequeathed may first be used, and if that is insufficient then the executors may sell as many shares of A. T. & T. stock as may be necessary, "but such sale of stock shall not affect the specific legacy contained in the First Clause of this Will."

The testatrix died on November 25, 1965, and Bostwick

was appointed executor of her will on January 18, 1966. In February, 1966, Bostwick transferred 150 shares of A. T. & T. stock to himself individually, and 1,135 shares to himself as executor.

This case came before this court on Bostwick's appeal from decrees of the Probate Court. By our order of April 28, 1971, we vacated the decrees of the Probate Court and remanded the case to that court for the purpose of receiving further evidence and making findings with reference to the number of shares of A. T. & T. stock owned by the testatrix when she executed her will, the number of such shares represented by each certificate of stock held by her on that date, all acquisitions, sales and transfers by her between that date and her death, and all dividends received by Bostwick on the disputed 125 shares.[1]

Pursuant to our order the parties filed a stipulation of facts which shows the following: When the testatrix executed her will on April 13, 1957, she owned 412 shares of A. T. & T. stock. On September 10, 1957, she acquired forty-five additional shares of A. T. & T. stock and she sold all 457 shares by October 24, 1957. Mr. Ralph W. Igoe was appointed temporary conservator for her on May 15, 1958, and was appointed conservator on June 28, 1958. On May 19, 1958, Mr. Igoe, acting as temporary conservator, repurchased 320 shares of A. T. & T. stock. The stock was split three for one on April 24, 1959, increasing the number of A. T. & T. shares held by the conservator to 960. Mr. Igoe sold twenty shares of the stock on March 21, 1962. He died May 16, 1962. The successor conservator sold fifty-five shares of the stock in December, 1962, and another fifty shares in September, 1963, leaving a balance of 835 shares. The stock was split two for one on June 1, 1964, as a result of which the successor conservator received 835 additional shares. He sold 385 shares in 1964 and 1965, leaving a total of 1,285 shares of A. T. & T. stock in the testatrix's estate when she

---

[1]The question concerning the allowance of an item in the executor's account, on which we also ordered further findings in the 1971 order, has not been raised again on appeal and is therefore not before us.

died in November, 1965.

The primary question raised in this case is whether Bostwick is entitled to the 125 shares of A. T. & T. stock he transferred to himself over and above the twenty-five shares bequeathed to him in the will. In our April 28, 1971, order to the Probate Court, we stated: ·''The important question presented to us is whether the bequest of twenty-five shares of stock to the executor was a specific bequest which would entitle him to the resulting 150 shares as of the date of the death of the testatrix, under the rule applied in *Igoe* v. *Darby,* 343 Mass. 145 [1961]; or whether it was a general bequest of shares which would entitle him to only twenty-five shares after the two splits, under the rule applied in *McGuinness* v. *Bates,* 345 Mass. 632 [1963].''

The manner in which we framed the issue and the two cases cited are indicative of the way this court has traditionally approached the question whether legatees should benefit from stock splits: we have first determined whether the testamentary gift (hereinafter called "legacy" or "bequest") in the will was general or specific, and then applied the result thought to follow automatically from the chosen label. If the bequest was found to be general, indicating that the testator did not have in mind particular property of his own at the time he executed his will, the legatee has only received the exact number of shares specified in the will; if, on the other hand, it was found that the testator intended to separate out and bequeath particular shares then in his possession, the bequest was termed specific and the legatee received the specified shares as well as the accretions created by the stock split.

In *Igoe* v. *Darby, supra,* the testatrix owned seventy-six shares of A. T. & T. stock at a par value of $100 a share when she executed her will, but a subsequent stock split increased the number she held to 228 by the time of her death, with the same total par value of $7,600. The Probate Court decided that the three legatees of the original seventy-six shares were not entitled to a proportionate number of the additional shares resulting from the stock split. On appeal,

this court stated that although ordinarily a gift of stock is held to be general, an intent to make the gift specific may be shown, and we concluded that the entire will did show an intent to make a specific legacy. Given this conclusion, we then held that the legatees were entitled to the additional shares. 343 Mass. at 149: Although the case was primarily decided by the traditional means of classifying the bequest as general or specific, it is worth noting that the court did observe that "[f]ollowing the stock split the interest of the testatrix in American [A. T. & T.] remained precisely the same; the change was one of form rather than substance. In receiving all of the shares the legatees are getting no more than they would have received had there been no split. It would be manifestly unjust to hold that they were not entitled to the additional shares resulting from the split." 343 Mass. at 149.

*McGuinness* v. *Bates, supra,* decided less than two years after the *Igoe* case, also involved the disposition of shares of stock which had increased in number as the result of a stock split; in that case, this court again relied on the distinction between specific and general legacies. The testator owned 127 shares of A. T. & T. stock when he executed his will and had bequeathed a total of forty-five shares to ten legatees. At the time of his death he held a total of 381 shares, as a result of a three for one stock split occurring after he executed his will. The Probate Court ruled that these were general legacies, and that therefore the legatees were not entitled to any of the additional shares. On appeal, this court affirmed the Probate Court's decree. We first distinguished *Igoe* v. *Darby, supra,* on its facts and then concluded that upon reading the will in the *McGuinness* case in the light of all the circumstances known to the testator at the time of its execution, there was sufficient indication that he intended to make general rather than specific legacies. There is no discussion as there was in the *Igoe* case of the effect of the stock split on the subsequent value of the legacies.

The approach used in these two cases of first labeling the gift as general or specific and then applying the seemingly

automatic consequences is the one we have used in all our prior and subsequent cases concerned with shares created by stock splits. See *First Natl. Bank* v. *Union Hosp. of Fall River,* 281 Mass. 64, 68 (1932); *First Natl. Bank* v. *Charlton,* 281 Mass. 72 (1932); *Lavin* v. *LeRoe,* 349 Mass. 773 (1965). It is an approach used frequently in other situations involving the disposition of stock, such as where the ademption of a legacy is involved, *Harvard Unitarian Soc.* v. *Tufts,* 151 Mass. 76 (1890); *Desoe* v. *Desoe,* 304 Mass. 231, 234-236 (1939), or where the court has considered the problem of contribution among legatees to satisfy bequests, *Tomlinson* v. *Bury,* 145 Mass. 346 (1887), or the question of the proper distribution of income earned on bequeathed property during administration, *Thayer* v. *Paulding,* 200 Mass. 98 (1908). However, we feel that the problems created by the use of the distinction between general and specific legacies in the stock split situation far outweigh any advantages it might have.

The two principal difficulties with the general versus specific classification approach are that it fails to consider the testator's intent with specific reference to the additional shares created by a stock split and that it also fails to recognize the basic nature of a stock split. As was stated by the Supreme Court of Rhode Island in a case involving the same issue we consider here, "It is readily apparent from an understanding of the basic elementary principles of corporate security law that a change in the number of shares of stock attributable to a split in the stock of the corporation occurring, as it does here, between the execution of the will and the death of the testator should be considered one of form and not substance. . . . A stock split in no way alters the substance of the testator's total interest or rights in the corporation. . . . [It] is merely a dividing up of the oustanding shares of a corporation into a greater number of units without disturbing the stockholder's original proportional participating interest in the corporation." *Egavian* v. *Egavian,* 102 R. I. 740, 746 (1967). Thus, for example, in a situation where a testator executes a will leaving 100 shares of a certain

stock to a named legatee and the stock splits two for one between the time the will was executed and the testator's death, if the court denies the legatee's right to receive the additional 100 shares, his legacy will be thereby reduced to only half of the corporate interest which the testator originally intended to bequeath. Furthermore, this result will ordinarily be due to a corporate decision over which the testator had little or no control. It is highly doubtful that this is the ultimate result the testator intended, although the unquestioned rule of construction in this jurisdiction is to give effect to the testator's intent where possible. *First Natl. Bank* v. *Charlton,* 281 Mass. 72, 75 (1932). *Igoe* v. *Darby* 343 Mass. 145, 147-148 (1961). It seems to us that the adoption of a different rule comporting more with corporate realities and a testator's intent would be timely and beneficial.

In cases involving stock splits, the majority of courts today hold that the legatee of a bequest of shares of stock is entitled to additional shares created by stock splits occurring in the interval between the execution of a testator's will and his death. See annotation, 46 A. L. R. 3d 7, 11-64 (1972). The theories by which they have arrived at such a result vary, but it is clear that many jurisdictions have concluded that the general or specific classification approach is overly rigid and formalistic, and have rejected it for a rule which is more in line with the testator's intent.

Thus, in *Egavian* v. *Egavian, supra,* the Rhode Island court stated it believed the distinctions between general and specific gifts were "unnecessary and inappropriate in cases involving stock splits." 102 R. I. at 745. In that case the testator owned 1,508 shares of A. T. & T. stock at the time of the execution of his will, and had bequeathed 1,000 shares to trustees for the benefit of his wife. At his death approximately three years later he owned 3,016 shares of the A. T. & T. stock as a result of a two for one split in the interim. The court pointed out that the change in number of shares as a result of the split had left the testator's proportionate ownership in the corporation the same and held that the trustees were entitled to 2,000 rather than 1,000 of the shares stating:

"It would give undue credence to pure fiction to hold that a testator's true intent as to whether a legatee should receive the increased number of shares due to a stock split could be determined from the degree of specificity with which the bequest was drafted when the contingency which has subsequently occurred [the stock split] was one the testator had little reason to anticipate at the time he drew his will and was one over which he had little control. . . . Whereas it has in the past been generally held that a legatee receives the surplus shares of stock split only if the testator is deemed to have specifically bequeathed the stock in question, today we . . . hold that it is presumed that the prime intent of the testator is that the legatee is to benefit from any increased shares coming by way of a stock split provided no contrary intent is evident in the will." 102 R. I. at 747-748.

Similarly, the New Hampshire court, in two recent decisions involving the distribution of additional shares created by stock splits, rejected the approach based on a classification of the bequest as a general or specific legacy. In the first, *In re Doonan Estate,* 110 N. H. 157 (1970), the court held that the shares received by the testator through a stock split should go to the residuary legatee rather than the named legatees of a bequest of the stock; however, it did so because the circumstances of the case made it clear to the court that the testator specifically intended that the named legatees should have the exact number of shares specified in the will and not the additional shares subsequently created: "We consider that the issues presented are not to be decided merely by applying the rubric of 'specific' or 'general' to the Clow [the named legatees] legacies and by attaching consequences thought to follow automatically from that determination. . . . [Citations omitted.] The testator's intention that the Clows should have the securities specifically designated by his will is abundantly clear." 110 N. H. at 161. In the second case, *In re Harvey Estate,* 110 N. H. 484 (1970), the court again criticised the specific versus general classification approach, using the Massachusetts cases of *Igoe* v. *Darby,* 343 Mass. 145 (1961), and *McGuinness* v.

*Bates,* 345 Mass. 632 (1963), to illustrate its point. 110 N. H. at 486. Like the Rhode Island court in *Egavian* v. *Egavian,* 102 R. I. 740 (1967), it observed that shares of stock represent a percentage ownership in the corporation which is not changed by a stock split, the new shares evidencing the same proportionate interest in the company as the old. It then joined the *Egavian* court in adopting a rule which would give the additional shares to the designated legatee of the stock absent an indication by the testator that he intended to reduce the bequest: "We hold that in the absence of action by the testator indicating a desire to reduce the bequest the additional shares resulting from the split should be transferred to the . . . [legatee]. This result is reinforced by preference indicated in the will for this bequest over the residuary bequest but absence of this factor would not change the result. *Egavian* v. *Egavian* . . . [*supra*]." 110 N. H. at 487-488 (other citations omitted). The court distinguished *In re Doonan Estate, supra,* on its facts, but cited it as standing for the reasoning it espoused. *Id.* at 486-487.

A significant number of other courts have adopted a rule similar to that of the Rhode Island and New Hampshire courts, often voicing the same criticism of our type of classification of gift approach. *Estate of Helfman,* 193 Cal. App. 2d 652, 656-658 (1961). *In re Vail's Estate,* 67 So. 2d 665, 667 (Fla. 1953). *In re Estate of Parker,* 110 So. 2d 498, 503-504 (Fla. App. 1959), cert. den. 114 So. 2d 3 (Fla.). *Allen* v. *National Bank,* 19 Ill. App. 2d 149, 155-156, 159-160 (1958). *Fisher* v. *Paine,* 210 Ore. 429, 441-443 (1957). *Warner* v. *Baylor,* 204 Va. 867, 876-878 (1964). *Estate of Barslow,* 128 Vt. 192, 195 (1969). Other courts have reached the same result by considering the testator's intent specifically regarding the additional shares created by a stock split. *Heinneman* v. *Colorado College,* 150 Colo. 515, 520-521, 523 (1962). *Matter of Fitch,* 281 App. Div. (N. Y.) 65 (1952). *In re McFerren Estate,* 365 Pa. 490, 495-496 (1950). *Marks Estate,* 435 Pa. 155, 160-161 (1969).

While there are also decisions in other jurisdictions that refuse to follow this rule, it appears that they are generally

distinguishable. Thus in some jurisdictions where the courts refused to grant the legatee of a bequest of stock the additional shares created by a stock split, they based their decisions primarily on statutes providing that a will shall speak as of the time of the testator's death. See *North Carolina Natl. Bank* v. *Carpenter,* 12 N. C. App. 19 (1971); *Davis* v. *Price,* 189 Tenn. 555 (1949); *Cuppett* v. *Neilly,* 143 W. Va. 845 (1958). Massachusetts does not have such a statute, but, as stated above, adheres to the principle that the intent of the testator is to be ascertained from the language of the will read in the light of the circumstances known to the testator at the time of its execution. *First Natl. Bank* v. *Charlton,* 281 Mass. 72, 75 (1932). *Desoe* v. *Desoe,* 304 Mass. 231, 234 (1939).

Other cases in which courts have refused the legatee the benefits of a stock split are distinguishable on their facts. See *Knight* v. *Bardwell,* 32 Ill. 2d 172 (1965); *In re Will of Loeb,* 206 So. 2d 615 (Miss. 1968). Although there is language in the *Knight* case criticising the treatment of a bequest of shares as a gift of a proportionate interest in the corporation, in each of these cases there appeared to be evidence of the testatrix's intent in relation to the additional shares created by stock splits, and each court primarily based its holding on the conclusion that the will manifested a clear intent to give the legatees the exact number of shares specified in the will.

We think that the rule set forth in the Rhode Island, New Hampshire and similar decisions cited above reflects a far more realistic approach to the problem of distributing additional shares created by stock splits than the general versus specific bequest distinction which we have heretofore followed. The rule is based on the sound premise that, as we noted in *Igoe* v. *Darby, supra,* at 149, the additional shares created by a stock split merely indicate a change in form, with the stockholder's proportionate interest or ownership in the corporation, his rights to dividends and rights upon dissolution remaining the same. Furthermore, we believe the rule comports more often with a testator's intent regarding such additional shares than is true of our gift classification

approach. As observed by several courts, in most cases the probable intent of the testator is to give a legatee the proportion of ownership in a corporation represented by the shares bequeathed on the date of the will's execution, since any other interpretation would mean the testator intended to subject his bequest to change or even negation by subsequent corporate actions over which he probably had little or no control. See, e.g., *In re Estate of Parker,* 110 So. 2d 498, 503-504 (Fla. App. 1959); *Allen* v. *National Bank,* 19 Ill. App. 2d 149, 154 (1958); *Warner* v. *Baylor,* 204 Va. 867, 876-877 (1964). Finally, it seems that the rule would obviate the necessity for continuously litigating the question whether a particular bequest of stock is general or specific when stock splits are involved, since the rule does not call initially for a determination of fact.

On the strength of the foregoing reasons, we today adopt the rule established in *Egavian* v. *Egavian,* 102 R. I. 740, 747-748 (1967), and *In re Harvey Estate,* 110 N. H. 484, 487-488 (1970), and hold that, in the absence of anything manifesting a contrary intent, a legatee of a bequest of stock is entitled to the additional shares received by a testator as a result of a stock split occurring in the interval between the execution of his will and his death.[2]

Our holding does not indicate that we have abandoned the classification of bequests as general or specific for all purposes. We have no occasion at this time to express any opinion on the continuing validity of such distinctions in those cases where abatement or ademption of the legacy is at issue, or where the court is asked to determine the proper order of distribution when the estate is inadequate to satisfy all bequests. See *Igoe* v. *Darby, supra,* at 147-148; *In re Estate of Parker, supra,* at 501; *Allen* v. *National Bank, supra,* at 156.

Applying the rule adopted to the facts of the case before us

[2] Stock dividends which a testator receives on shares he has previously bequeathed in his will raise questions about distribution similar to those we have discussed in relation to shares created by stock splits. While it is indicated that many courts considering stock dividends in this situation have ruled that they will not pass to the named legatee, see annotation, 46 A. L. R. 3d, 7, 64-86; Note, 36 Albany L. Rev. 182, 188-192 (1971), the issue of the proper distribution of stock dividends is not before us in this case and we therefore express no opinion on the question.

we hold that Bostwick is entitled to the 125 shares in addition to the twenty-five bequeathed.

After examining the language used by the testatrix in her will, we cannot agree with the respondents that she intended to give Bostwick twenty-five shares of A. T. & T. stock held at the time of her death rather than shares of the stock she held when the will was executed. The phrase "at the time of my death" in Clause First modifies only the bequest of furniture and furnishings to Bostwick and "at the time of my decease" in Clause Second modifies only the bequest of stock to the respondents; there is no such modifying clause accompanying the bequest of stock to Bostwick. Nor can we find an indication that the testatrix would not wish Bostwick to receive such portion of the additional shares created by the splits as would correspond to the twenty-five shares she had bequeathed to him; whatever indications there are would lead to the opposite conclusion. Thus in Clause Nineteenth she stated specifically that Bostwick's twenty-five shares of A. T. & T. stock were not to be used for the expenses of the estate, although the remaining A. T. & T. stock left to the respondents could be so used if necessary.

These provisions indicate that the testatrix wanted Bostwick to enjoy the full value of the twenty-five A. T. & T. shares she had bequeathed and was giving him her interest in the corporation which these shares represented at the time she executed her will. The two subsequent stock splits created a sixfold increase in the number of A. T. & T. shares, so that when the testatrix died the fractional interest in the corporation represented by the bequeathed twenty-five shares was only a sixth of what it had been when her will was executed.[3]

---

[3]Furthermore, we take judicial notice of the fact that each split was immediately followed by a corresponding fractional drop in the stock's sale price, and rises in the price thereafter occurred only over a period of years. See 1 C.C.H., Capital Changes Reporter, p. A-355; Commercial & Fin. Chronicle, June 1, 1959, p. 15; June 8, 1959, p. 15; September 14, 1959, p. 15; December 28, 1959, p. 11; May 30, 1960, p. 15; ISL Daily Stock Price Index, N. Y. Stock Exchange, 2d Quarter, 1954, p. 19; 4th Quarter, 1964, p. 19; 2d Quarter, 1965, p. 18.

We take judicial notice of this information as facts, which although probably not generally known, are capable of immediate verification through reference to sources recognized as authoritative. See Hughes, Evidence, §§ 71, 79. Professor Hughes states that there are three types of judicial notice: (1) of facts within common

Therefore, at the time of the testatrix's death, the interest she bequeathed to Bostwick consisted of 150 shares, and not twenty-five.

Finally, we note that the stock splits involved in this case occurred two years and seven years, respectively, after the testatrix executed her will. It seems highly unlikely that she thought about the possibility of such splits at the time of its execution. In 1958, a full year before the first split, a temporary conservator was appointed to handle the testatrix's property on grounds of her advanced age and mental weakness. The presumable necessity of this step suggests the possibility that she was not even aware of the splits and certainly not aware of their potential effect on the provisions of her will. It is also possible that she may not have had the competence to execute a new will, even if she had wanted to. Absent any indications of an intent to do so, we will not reduce the testatrix's bequest to Bostwick to one-sixth of its original size by denying his right to the additional 125 shares.

As noted above, the stipulation of facts filed by the parties shows that all 457 shares of A. T. & T. stock held by the testatrix were sold in September and October of 1957, several months after she executed her will, and that her temporary conservator repurchased 320 shares of A. T. & T. stock in May of 1958. The respondents contend that if the testatrix's bequest to Bostwick is determined to be specific as of the date of the will's execution, which would entitle him to a proportionate part of the split shares under the general versus specific legacy classification approach, the bequest was adeemed when she caused her shares to be sold. We do not agree. This conclusion is not based on our present rejection of the general versus specific legacy distinction for resolving questions concerning stock splits; rather, we think that the concept of ademption in and of itself need not and should

___

knowledge; (2) of facts not within common knowledge but within the range of verifiable certainty by reference to recognized authorities (as seems true in this case); and (3) of facts deemed within the special competence of the judge. He suggests that facts within the second category have been judicially noticed with increasing frequency in our cases, but that the decisions have often mislabeled them as facts within common knowledge; he submits that such a description is unrealistic and impedes the growth of what he views as a constructive use of judicial notice.

not be interpreted to include within its scope the circumstances present in this case.

It is true that this court has long followed the rule in ademption cases that we must look to the identity of the bequeathed property at the time of the testator's death; we have focused on the actual existence or nonexistence of such property, and not on the intent of the testator with respect to it. See *Walsh* v. *Gillespie,* 338 Mass. 278, 279-280 (1959), and cases cited therein. Furthermore, our cases have traditionally held that a bequest of specific property "can only be satisfied by the thing bequeathed; if that has no existence, *when the bequest would otherwise become operative,* the legacy has no effect. If the testator subsequently parts with the property, even if he exchanges it for other property or purchases other property with the proceeds, the legatee has no claim on the estate for the value of his legacy. The legacy is adeemed by the act of the testator" (emphasis added). *Tomlinson* v. *Bury,* 145 Mass. 346, 347-348 (1887). *Harvard Unitarian Soc.* v. *Tufts,* 151 Mass. 76, 78-79 (1890). *Moffatt* v. *Heon,* 242 Mass. 201, 203-204 (1922). *First Natl. Bank* v. *Perkins Inst. for the Blind* 275 Mass. 498, 500-501 (1931). *Keegan* v. *Norton,* 322 Mass. 158, 159-160 (1947). None of these cases, however, involved a situation where a testatrix, having bequeathed shares of corporate stock which she owned when she executed her will, has then sold them, has subsequently repurchased stock of the same kind as that described in the bequest, and then has died without changing her will in any manner.

As the statement quoted above from *Tomlinson* v. *Bury, supra,* shows, the critical question for ademption concerns the existence of the property satisfying the bequest at the time the will takes effect. At the time she executed her will and also at the time of her death the testatrix in this case owned more than enough of A. T. & T. stock to satisfy her bequest to Bostwick; in addition, there is nothing in the will to indicate that she had separated out twenty-five specifically identified shares or one particular certificate representing that number for the legacy. In these circumstances, despite

the testatrix's lack of continuous ownership, we do not violate our rule that "identity" and not "intent" governs ademption cases by holding that her bequest of A. T. & T. stock to Bostwick was not adeemed. See annotation, 61 A. L. R. 2d 449, 452 and n. 6 (1958); Atkinson, Law of Wills, § 134, p. 743 (2d ed. 1953). Cf. *Ullmann* v. *First Natl. Bank,* 273 Ala. 154, 157-158 (1961).[4]

This case is remanded to the Probate Court for the entry of a decree declaring that under Clause First of the testatrix's will, James Bostwick, legatee, is entitled to 150 shares of stock in the American Telephone and Telegraph Company, and to all dividends received on such 150 shares since the death of the testatrix.

*So ordered.*

---

[4]There was evidence in the case at bar suggesting that the testatrix was not even aware that her A. T. & T. stock had been sold until so informed nine months after the sales; that she had not wanted to sell it; and that she was pleased her conservator had repurchased additional shares. There was no specific finding that she was incompetent at the time of the sales. Therefore, we do not base our conclusion that there was no ademption of Bostwick's legacy on the testatrix's possible incapacity or incompetence. Cf. *Walsh* v. *Gillespie, supra,* at 280-282.