427 S.E.2d 466

**Geraldine C. WATSON and Virginia Paletti, Co–Executrices of the Estate of Frank Cirigliano, Appellees**

v.

**Pasquale SANTALUCIA, et al., Defendants Below, Appellees**

**John T. Law, Marino Paletti, and Teresa Calabrese, Defendants Below, Appellants.**

**No. 21221.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 20, 1993.

Decided Feb. 11, 1993.

W.T. Weber, Jr., Weston, for appellees.

James C. Turner, Waters, Warner & Harris, Clarksburg, for defendants below, appellees.

James C. West, Jr., Norman T. Farley, West & Jones, Clarksburg, for defendants below, appellants.

NEELY, Justice:

The question before us is what happens when a stock splits immediately before the death of a testator, and the testator has left a specific number of shares to his heirs. Traditionally, we viewed such a question as turning on whether the bequest was "specific" or "general" and then applied the result thought to follow automatically from the chosen label. However, the problems created by the use of the distinction between "general" and "specific" legacies in the stock split situation far outweigh any advantages to be gained by relying on those classifications. Instead we adopt today the rule that, in the absence of anything manifesting a contrary intent, a legatee of stock is entitled to any additional shares received by a testator as the result of a stock split occurring in the interval between the execution of a will and the testator's death. Accordingly, we reverse the decision of the Circuit Court of Lewis County.

The facts are not disputed. Frank Cirigliano (testator) died testate on 15 May 1990. The testator's will, dated 30 June 1988, as modified by two codicils executed in February 1990, was admitted to probate on 21 May 1990. The appellants are John T. Law, Marino Paletti and Teresa Calabrese, each the legatee of 100 shares of stock in Citizens Bancshares, Inc. The appellees,

**34**

plaintiffs below, Geraldine C. Watson and Virginia Paletti, are the co-executrices of the estate and the beneficiaries under the residuary clause of the testator's will.

On 30 June 1988, (as well on 27 February 1990 when the most recent codicil to the will was executed) the testator owned 2,000 shares of the capital stock of Citizens Bancshares, Inc. The following provisions are relevant to this case:

"FOURTH: I give and bequeath unto John T. Law 100 shares of the capital stock of Citizens Bancshares, Inc.

FIFTH: I give and bequeath unto Marino Paletti 100 shares of the capital stock of Citizens Bancshares, Inc.

SIXTH: I give and bequeath unto Teresa Calabrese 100 shares of the capital stock of Citizens Bancshares, Inc.

\*　　\*　　\*　　\*　　\*　　\*

NINTH: I hereby authorize, empower and direct the personal representatives of this, my Will, as soon after my death as my said personal representatives may consider it advantageous, to sell, convey and otherwise transfer and convert to money all my property and estate, real, personal and mixed, wheresoever situate, which at my death may not already be in the form of cash, except for and subject always to the provisions of Items 'Second' through 'Eighth', above, and any and all sales by my personal representatives, pursuant to the authority vested in said personal representatives by this item, may be made by my said personal representatives at private or public sale, at such time or times, at such place, or places, at such price or prices, and upon such terms and conditions as to cash or credit as may be fixed by my said personal representatives.

\*　　\*　　\*　　\*　　\*　　\*

TWENTY–SEVENTH: I give and bequeath all of the rest, residue and remainder of my estate unto the following persons in the following proportions:

Pasquale Cirigliano, my nephew, one-ninth (⅑th);

Maria Cirigliano Covelli, my niece, one-ninth (⅑th);

Angiolina Cirigliano, my niece, one-ninth (⅑th);

Antonio Santalucia, my nephew, one-ninth (⅑th);

Francesca Santalucia Petrocelli, my niece, one-ninth (⅑th);

Teresina Santalucia, my niece, one-ninth (⅑th);

Rosa Santalucia, my niece, one-ninth (⅑th);

Pasquale Santalucia, my nephew, one-ninth (⅑th); and

The children of Giuseppe Santalucia, my nephew, who are living at the time of my death, one-ninth (⅑th)."

On 21 April 1990, the shareholders of Citizens Bancshares, Inc., at its regular annual meeting, caused a four-for-one split of the shares of the corporation. The par value of the stock was commensurately reduced from one dollar a share to twenty-five cents per share. This stock split became effective on 1 May 1990. On 15 May 1990, after a protracted illness that confined him to his home, Mr. Cirigliano died; at that time his 2,000 shares of stock in Citizens Bancshares, Inc., had become 8,000 shares as a result of the stock split.

On 11 December 1991, the Circuit Court of Lewis County entered its order that Mr. Law, Mr. Paletti and Ms. Calabrese are entitled only to the 100 shares mentioned in the will, as opposed to the same proportional interest in the bank, now represented by four hundred shares each, that they would have had if the testator had died fifteen days earlier. Mr. Law, Mr. Paletti and Ms. Calabrese appeal from that decision.

■ "The paramount principle in construing or giving effect to a will is that the intention of the testator prevails, unless it is contrary to some positive rule of law or principle of public policy." Syl. pt. 1 *Farmers & Merchants Bank v. Farmers & Merchants Bank*, 158 W.Va. 1012, 216 S.E.2d 769 (1975). However, in reaching his decision, the circuit court relied to a large extent on *W.Va. Code* 41–3–1 [1923], which states, in full:

A will shall be construed, with reference to the estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator, *unless a contrary intention shall appear by the will.* [Emphasis added]

Code 41–3–1 [1923] is a codification of a common law rule. In construing similar statutes or the common law rule, most jurisdictions have concluded that this rule "relates to the effect and operation of the instrument, not to its construction." *Egavian v. Egavian,* 102 R.I. 740, 745, 232 A.2d 789, 792 (1967); *Lee v. Foley,* 224 Miss. 684, 689, 80 So.2d 765, 767 (1955). Indeed, a common sense reading of the "unless a contrary intention shall appear by will" exception to *W.Va. Code* 41–3–1 [1923] means that we need to determine the intent of the testator *before* this statute has any meaning. *Weiss v. Soto,* 142 W.Va. 783, 98 S.E.2d 727 (1957). Indeed, reference to *W.Va. Code* 41–3–1 [1923] in this situation merely serves to confuse the issue, not to clarify. Our mission is to follow our cardinal rule of will construction: We must determine the testator's intent.

■ Traditionally, most courts (including this Court) relied on the distinction between a "general" bequest and a "specific" bequest to determine to whom the shares of stock acquired in a split after the will was executed, but before the death of the testator, belonged: the named legatee or the residuary legatee. However, the general/specific distinction was not initially designed for use in this area, but only for purposes of ademption, abatement, or disposition of income earned on the principal of the bequest during administration of the estate.[1] Furthermore, most courts have found that relying on such a standard does not comport with the notion of effecting the testator's intent:

> The two principal difficulties with the general versus specific classification approach are that it fails to consider the testator's intent with specific reference to the additional shares created by a stock split and that it also fails to recognize the basic nature of a stock split.

*Bostwick v. Hurstel,* 364 Mass. 282, 287, 304 N.E.2d 186 (1973). We agree with the reasoning of the *Bostwick* court and adopt the rule that the distinction between a "specific" bequest and a "general" bequest is not applicable to a stock split.[2] A stock split is merely a bookkeeping adjustment on the part of the corporation; "it does not alter the pre-existing proportionate interest of any stockholder or increase the intrinsic value of his holding or of the aggregate

---

1. An excellent summary of the appropriate use of the general/specific legacy distinction is found in *Re Estate of Parker,* 110 So.2d 498, 500–501 (Fla.App.1959), *cert. denied,* 114 So.2d 3 (Fla.1959):

> A specific legacy is a gift by will of property which is particularly designated and which is to be satisfied only by the receipt of the particular property described. Income received during administration on property specifically devised shall become property of the specific devisee. A general legacy or devise is one which does not direct the delivery of any particular property; is not limited to any particular asset; and may be satisfied out of the general assets belonging to the estate of the testator and not otherwise disposed of in the will. Income received on the property which is the subject of a general bequest passes to the residue of the estate.
>
> It was held at common law that if the particular property described in a specific bequest is disposed of by the testator during his life, or cannot be located, the bequest must fail or adeem. It was also the rule at common law that if the subject of a bequest was described in general terms, it was considered to be a general bequest and disposition by testator during his life of all or a part of the property so bequeathed did not create an ademption. In such case the personal representative was required to obtain and deliver to the legatee property satisfying the general description of the bequest. If, however, the property designated in the will for payment of charges against the estate was insufficient for that purpose, general bequests would abate prior to specific bequests.
>
> The technical distinction between general and specific bequests becomes important only when considering situations involving ademption, abatement or disposition of income earned on the subject of the bequest during administration.

2. We express no opinion today on the applicability of the "specific"/"general" distinction to other events that may occur between the execution of a will and the death of the testator, such as dividend reinvestments or stock dividends; the issue is not before us.

holdings of the other stockholders as they stood before. The new certificates simply increase the number of shares, with consequent dilution of the value of each share." *Eisner v. Macomber*, 252 U.S. 189, 211, 40 S.Ct. 189, 194, 64 L.Ed. 521 (1920). Furthermore, a stock split is an event over which a testator rarely has control or advance knowledge. Therefore, our question becomes: When the testator bequeathed 100 shares of stock in Citizens Bancshares, Inc., did he intend to give the control over the corporation that 100 shares provided at the time of execution, or did he intend to give exactly 100 shares, no matter what percentage of the corporation those shares represented at the time of his death?

In *Cuppett v. Neilly*, 143 W.Va. 845, 105 S.E.2d 548 (1958) (the only West Virginia case on point), this Court was presented with a situation where a woman left 100 shares of General Motors common stock to a legatee. General Motors then split its stock three-for-one two years after the testatrix executed her will, but two-and-a-half years before the testatrix died. After the split, the testatrix sold fifty of the shares and died owning 250 shares of General Motors common stock. The dispute was over whether the 150 shares of General Motors common stock that remained from the split would pass to the beneficiary of the stock bequest or to the residuary estate.

Although this Court could have relied on the intent of the testator to reach its decision, this Court instead relied on the general/specific bequest distinction. As we have seen above, however, reliance on this distinction is misplaced in the stock split situation. *Egavian v. Egavian, supra; In re Estate of Parker, supra; Bostwick v. Hurstel, supra.* See also, *In re Doonan Estate*, 110 N.H. 157, 262 A.2d 281 (1970) ("We consider that the issues presented are not to be decided merely by applying the rubric of 'specific' or 'general' to the Clow [named legatees] legacies and by attaching consequences thought to follow automatically from that determination"); *Change in Stock Bequeathed—Effect*, 46 A.L.R.3d 7, §§ 5–6 (1972). Therefore, to the extent that the *Cuppett* decision relied upon the general/specific bequest distinction to decide the distribution of the additional shares as a result of the stock split, it is overruled.

■ Without the general/specific fiction to rely on, we must now determine what this testator would have wanted done with the shares that accrued as a result of the stock split. A stock split is an occurrence that a testator has little reason to anticipate at the time he executes his will and one over which he has little or no control. Moreover, the intent of a testator in bequeathing stock rather than cash seems to imply that the testator intends to give a certain share of a corporation rather than a specific dollar value. The best way to effect the testator's intent, then, is to behave as if the stock split had never happened and to award to beneficiaries of specific stock bequests accretions as a result of stock splits between execution of the will and the death of the testator. Therefore, in the absence of anything manifesting a contrary intent, a legatee of stock is entitled to any additional shares received by a testator as the result of a stock split occurring in the interval between the execution of a will and the death of the testator. The result of this rule is that the interests are divided in the same manner as the testator intended; they are apportioned *as if the split had never occurred.*

■ In this case, we apply our presumption that the testator would intend that the same interests be given to the legatees of stock shares as if the split had never occurred. John T. Law, Marino Paletti and Teresa Calabrese, the legatees of 100 shares of stock in Citizens Bancshares, Inc. (each) in the will are to receive 400 shares each, with the balance of the stock passing, as per the will, to the residuary legatees.

Accordingly, the decision of the Circuit Court of Lewis County is reversed, and the case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.